IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 4, 2004 Session

## PEGGY BAILEY, ET AL. v. DR. JOHN J. TASKER

**Appeal from the Law Court for Sullivan County**
**No. C34264(M)     John S. McLellan, III, Judge**

**FILED MARCH 17, 2004**

**No. E2003-00844-COA-R3-CV**

Peggy Bailey and her husband, Gary Bailey[1], sued Dr. John J. Tasker for wrongful conduct in connection with two separate surgeries, one on April 10, 1997, and another on June 24, 1999. The trial court granted the defendant's motion for summary judgment, finding that the material filed by the parties fails to reflect a genuine issue of material fact and that the record before it demonstrates conclusively (1) that the defendant did not violate the applicable standard of care, and (2) that the plaintiffs' claims were filed outside the period of the applicable statutes of limitations and of repose. The plaintiffs appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Law Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Richard A. Spivey, Kingsport, Tennessee, for the appellants, Peggy Bailey and Gary Bailey.

Jeffrey M. Ward, Greeneville, Tennessee, for the appellee, Dr. John J. Tasker.

### OPINION

#### I.

In December, 1996, the plaintiff was referred to the defendant, a Kingsport OB/GYN, with symptoms of abdominal pain, irregular bleeding, and other complaints. On January 9, 1997, the defendant operated on the plaintiff, which operation revealed the presence of free fluid and blood in the pelvic cavity. The defendant removed the fluid and blood.

---

[1]When we use the singular "plaintiff," we are referring to Mrs. Bailey.

When the plaintiff's symptoms persisted, the defendant recommended a hysterectomy. The plaintiff testified that, on April 9, 1997, the defendant told her he would perform the hysterectomy vaginally, but that if, during the procedure, he determined that it was necessary to remove her ovaries, he would stop the procedure and make an incision in her abdomen. The defendant performed the hysterectomy on April 10, 1997. Later on the same day, the plaintiff learned that, contrary to the defendant's assurance of April 9, 1997, he had in fact removed her ovaries laparoscopically rather than through an abdominal incision.

Subsequently, on an unidentified date in the same year, the plaintiff, while cleaning the house of Dr. Alley, the anesthesiologist who was present at the April 10, 1997, surgery, discussed with him the problems she had experienced since the surgery. The plaintiff told Dr. Alley that "something was wrong," at which point Dr. Alley, according to the plaintiff, told her that the defendant should have "opened up" the plaintiff instead of performing the surgery laparoscopically.

Due to recurring urinary tract infections and bacterial infections, the plaintiff later saw two different gynecologists, as well as her family physician, Dr. Haynes. She claims that, on June 11, 1999, Dr. Haynes diagnosed her condition as a punctured urethra. The plaintiff interpreted Dr. Haynes' diagnosis to mean that the puncture occurred during her hysterectomy. According to the plaintiff, Dr. Haynes referred her back to the defendant for evaluation and treatment.

Upon his examination of the plaintiff, the defendant determined that the problems she had been having were not due to a punctured urethra, but rather were caused by a Skene's abscess, which is "an infection of one of several paraurethral glands." On June 24, 1999, the defendant performed a second surgery on the plaintiff to drain the abscess.

On June 12, 2000,[2] the plaintiff and her husband filed a *pro se* complaint against the defendant, alleging (1) that he had committed a battery on her in the performance of the hysterectomy on April 10, 1997, and (2) that the surgery had been negligently performed. Approximately one month later, on July 17, 2000, the plaintiffs took a voluntary nonsuit without prejudice. On July 11, 2001, within the one-year saving statute,[3] the plaintiffs refiled the identical lawsuit, again acting *pro se*. Thereafter, the plaintiffs retained counsel.

The defendant filed a motion to dismiss, alleging that the plaintiffs had filed their lawsuit outside the period of the applicable statutes of limitation and of repose. That motion was denied. On March 14, 2002, the plaintiffs filed a motion to amend their complaint so as to allege that the defendant failed to advise the plaintiff of the specific risks involved in the April 10, 1997, surgery; that the defendant fraudulently concealed from the plaintiff his "tortious acts and omissions"; and that the defendant was negligent in his performance of the second surgery on June 24, 1999. The plaintiffs' motion to amend was granted by the trial court on February 26, 2003.

---

[2]June 11, 2000, was a Sunday. *See* Tenn. R. Civ. P. 6.01.

[3]Tenn. Code Ann. § 28-1-105(a) (2000).

On September 3, 2002, the defendant filed a motion for summary judgment, supported by his statement of undisputed facts. On February 26, 2003, the trial court entered an order granting the defendant's motion. From this order, the plaintiffs appeal.

## II.

Summary judgment should be granted "when both the facts and the conclusions to be drawn from the facts permit a reasonable person to reach only one conclusion." ***Carvell v. Bottoms***, 900 S.W.2d 23, 26 (Tenn. 1995) (citation omitted). Since a motion for summary judgment presents a pure question of law, our review is *de novo* with no presumption of correctness as to the trial court's judgment. ***Gonzales v. Alman Constr. Co.***, 857 S.W.2d 42, 44 (Tenn. Ct. App. 1993). Our role is to decide anew if summary judgment is appropriate.

## III.

## A.

The issues raised on this appeal can be succinctly stated as follows:

> 1. Did the trial court abuse its discretion when it denied the plaintiffs' motion to continue the hearing on the defendant's motion for summary judgment?
>
> 2. Did the trial court err in failing to find a genuine issue of material fact as to the plaintiffs' contention that the defendant fraudulently concealed his negligent treatment of the plaintiff?
>
> 3. Is the defendant entitled to summary judgment based on the statute of limitations and the statute of repose?
>
> 4. Is the defendant entitled to summary judgment based upon his testimony regarding the standard of care?

## B.

The plaintiffs argue that the trial court abused its discretion when it denied their motion to continue the summary judgment hearing. We disagree.

On May 3, 2002, the trial court entered a scheduling order requiring that all party depositions be taken on or before May 31, 2002. In addition, the order required the plaintiffs to disclose their expert witnesses within 45 days following the deposition of the defendant. The defendant was deposed on May 28, 2002. However, the plaintiffs failed to disclose their expert witnesses during the period specified in the scheduling order.

The plaintiffs filed a motion to revise the scheduling order on July 22, 2002, requesting the trial court to extend until August 21, 2002, the time for disclosure of expert witnesses. On August 21, 2002, the plaintiffs sent a letter to the defendant, naming two of the plaintiff's treating physicians as expert witnesses, but the letter did not disclose the opinions of those physicians.

On October 31, 2002, the plaintiffs filed a second motion to revise the scheduling order, requesting this time that the court extend the time for disclosure of additional expert witnesses to December 31, 2002. The parties appeared before the trial court on December 20, 2002, to argue the defendant's motion for summary judgment. However, due to confusion caused by the misnumbering of the paragraphs in the defendant's statement of undisputed facts, the trial court continued the hearing to February 7, 2003. The court instructed the plaintiffs that they had to have "an expert witness to properly oppose [the defendant's] motion."

On January 27, 2003, the plaintiffs filed a motion to continue the hearing on the summary judgment motion until March 7, 2003. In support of their motion, the plaintiffs submitted the affidavit of their attorney. The affidavit recites that the issues raised in the defendant's motion for summary judgment "are sufficiently complex as to require a substantial amount of time for further research and evaluation"; that plaintiffs' counsel has "found [himself] in the midst of an especially busy criminal and civil trial docket"; that office repairs due to flooding have interfered with counsel's ability to conduct business; that the heart condition of the plaintiff's husband has required counsel to "avoid matters that upset him," causing counsel to be "disinclined to engage in discussions with him regarding this matter due to . . . concern for his well-being"; and that counsel needs more time to find an expert witness. In denying the plaintiffs' motion on February 7, 2003, the trial court stated the following:

> Based upon the foregoing procedural history and the overall circumstances and conditions involved in this case, the Court, in the exercise of its discretion, finds that the plaintiffs' motion to continue and for additional time is not well taken and therefore should be denied.

Under the abuse of discretion standard,

> a trial court's ruling "will be upheld so long as reasonable minds can disagree as to [the] propriety of the decision made." *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000). A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co*., 970 S.W.2d 920, 927 (Tenn. 1998).

-4-

***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001). In view of the fact the plaintiffs had more than nine months from the time of the initial scheduling order until the hearing on the summary judgment motion to find an expert witness to controvert the deposition testimony of the defendant, we believe the trial court's decision to deny the plaintiffs' motion for yet more time to find an expert was, at a minimum, a decision about which "reasonable minds can disagree as to [the] propriety of the decision made." ***Gilliland***, 22 S.W.3d at 273. In fact, we doubt that few, if any, would find a continuance justified in this case by the facts set forth in the affidavit.

The plaintiffs argue, among other things, that they were unable to locate an expert due to the failure of the defendant to timely provide them with his office notes pertaining to his treatment of the plaintiff. However, the plaintiffs received these records on November 20, 2002, and, as the defendant points out in his brief, that gave the plaintiffs 79 days to locate an expert. In any event, the reasons advanced by the plaintiffs for a delay as set forth in their counsel's affidavit, standing alone, are not, in our judgment, sufficient to place the trial court in error for failing to grant a continuance. In short, we find no abuse of discretion in the trial court's denial of the plaintiffs' motion.

C.

We now turn to the dual issues of whether the plaintiffs' claim of a battery in the first surgery is barred by the applicable statute of limitations and whether their claim of negligence in the performance of that surgery is barred by the statute of repose.

As previously noted, the defendant performed surgery on the plaintiff on two separate occasions, *i.e.*, on April 10, 1997, and again on June 24, 1999. The plaintiffs' original complaint was filed on June 12, 2000. In that complaint, the plaintiffs alleged (1) negligence and, what appears to be, (2) an informed consent medical malpractice cause of action, *all with respect to the April 10, 1997, surgery*. While the June 24, 1999, surgery is mentioned in the original complaint, there are no allegations of a cause of action with respect to that second surgery. The second surgery is mentioned only in passing and apparently only as a consequence of the earlier surgery. In our judgment, the gravamen of the original complaint deals exclusively with the first surgery of April 10, 1997.

In the preceding paragraph we stated that the plaintiffs, in their original complaint, alleged "what appears to be" an informed consent medical malpractice action. We say this because it is not entirely clear to us whether the plaintiffs are pursuing an informed consent medical malpractice action or a medical battery suit. *See ****Blanchard v. Kellum***, 975 S.W.2d 522, 524-25 (Tenn. 1998). The allegations in the original complaint and the plaintiffs' second complaint seem to indicate the former, while the plaintiff's testimony essentially consists of an accusation that the defendant performed a procedure not authorized by her. Regardless of which it is, the plaintiff's own testimony reflects that the plaintiffs were aware of sufficient facts on the day of the first surgery, and certainly,

based upon the plaintiff's conversation with Dr. Alley, no later than the end of 1997,[4] to put the plaintiffs on notice of a cause of action against the defendant for a battery, be it an informed consent medical malpractice claim or a medical battery claim. The original suit filed June 12, 2000, was filed more than one year after both dates. Hence, this part of the plaintiffs' claim is barred by a one-year statute of limitations. Assuming their claim is one based upon informed consent medical malpractice, the applicable statute of limitations is the one-year period set forth in Tenn. Code Ann. § 29-26-116 (2000). If the plaintiffs are claiming a medical battery, the period of limitations is again one year, but this time pursuant to the provisions of Tenn. Code Ann. § 28-3-104(a)(1) (2000). As can be seen, the period of limitations, under both scenarios, is one year. The plaintiffs' original complaint was filed on June 12, 2000, more than one year after both of the possible triggering events. Hence, the "battery" part of their claim was not timely filed.

As to the plaintiffs' claim that the defendant negligently punctured the plaintiff's urethra during her hysterectomy, the plaintiffs assert that they did not become aware the urethra had been punctured in that surgery until June 11, 1999, when, according to the plaintiff, her family physician, Dr. Haynes, revealed this fact to her. If this be the case, the plaintiffs had until June 12, 2000,[5] to file suit as to the negligence claim in order to satisfy the applicable statute of limitations. Suit, in fact, was filed on June 12, 2000. This filing, however, while satisfying the statute of limitations, is outside the three-year period of the statute of repose. That period expired on April 10, 2000. In order to avoid the barring effect of the statute of repose, the plaintiffs contend that the defendant fraudulently concealed his negligence. They rely upon the "fraudulent concealment" language of Tenn. Code Ann. § 29-26-116(a)(3) to establish the timeliness of their suit, which, according to them, was filed "within one (1) year after discovery that the cause of action exists." *Id*. The crux of the plaintiffs' argument is that the defendant punctured the plaintiff's urethra during the April 10, 1997, surgery; that he knowingly concealed this fact from the plaintiff; and that this "fraudulent concealment" tolled the running of the statute of repose.

Tenn. Code Ann. § 29-26-116(a)(3) provides for the tolling of the statute of repose for "fraudulent concealment on the part of the defendant." When faced with a facially-valid defense of the statute of repose, a plaintiff must establish a ground for tolling the statute. *See Green v. Sacks*, 56 S.W.3d 513, 518 (Tenn. Ct. App. 2001).

The Supreme Court has addressed the elements of a fraudulent concealment claim thusly:

> [A] plaintiff in a lack of informed consent case (or any other medical malpractice case) attempting to toll the statute of repose contained in [Tenn. Code Ann. §] 29-26-116(a)(3) by relying upon the fraudulent concealment exception to the statute must establish that (1) the health

---

[4]We say "no later than the end of 1997" because the plaintiff could not pinpoint the date of the conversation other than to say that it occurred sometime in 1997.

[5]See footnote 2 to this opinion.

care provider took affirmative action to conceal the wrongdoing or remained silent and failed to disclose material facts despite a duty to do so, (2) the plaintiff could not have discovered the wrong despite exercising reasonable care and diligence, (3) the health care provider knew of the facts giving rise to the cause of action and, (4) a concealment, which may consist of the defendant withholding material information, making use of some device to mislead the plaintiff, or simply remaining silent and failing to disclose material facts when there was a duty to speak.

*Shadrick v. Coker*, 963 S.W.2d 726, 736 (Tenn. 1998).

In the instant case, the defendant testified under oath that the plaintiff's urethra was not punctured in the surgery of April 10, 1997. The plaintiffs *allege*, based upon a conversation that the plaintiff says she had with her family physician, Dr. Haynes, that the defendant did puncture her urethra during that surgery.

The plaintiffs did not present the verified testimony of Dr. Haynes or anyone else establishing that the plaintiff's urethra was punctured or, if punctured, was done so as a result of any negligence on the part of the defendant in the April 10, 1997, surgery. Neither the plaintiff's deposition testimony regarding her conversation with Dr. Haynes nor the clinical notes of Dr. Haynes filed in the record, or the two in combination, are *legally* sufficient to establish either of these facts. In order to be considered on summary judgment, the proffered proof must be admissible evidence. *See Byrd v. Hall*, 847 S.W.2d 208, 215-16 (Tenn. 1993) ("[T]he facts on which the nonmovant relies must be admissible at the trial but need not be in admissible form as presented in the motion.") Since none of the evidence upon which the plaintiffs rely would be "admissible at the trial" to prove that the plaintiff's urethra was punctured in the first surgery,[6] that evidence cannot be used to create a genuine issue of material fact on the issue of fraudulent concealment.

Since the only admissible evidence before us establishes that the defendant did not puncture the plaintiff's urethra, there is no basis for finding a genuine issue of material fact on the plaintiffs' allegation of fraudulent concealment. Simply stated, one cannot conceal that which did not occur. Thus, assuming, as we must in the summary judgment context, that the plaintiffs' original complaint as to the negligent performance of the first surgery was filed within the period of the applicable

---

[6]While the plaintiff's testimony regarding her conversation with Dr. Haynes is hearsay when offered to prove the truth of the statement that the plaintiff's urethra was punctured in the first surgery, it is admissible to prove when the plaintiffs first *learned* of this fact *vis-a-vis* when the statute of limitations began to run on their negligence claim. This is because the subject evidence is relevant on the issue of when the plaintiffs were first put on notice of their cause of action. Since, with respect to notice, the plaintiffs are not offering the evidence to prove the truth of the matter asserted in the conversation, the evidence is not hearsay and hence not barred by the hearsay rule. *See Thompson v. Adcok*, 63 S.W.3d 783, 793 (Tenn. Ct. App. 2001); *see also* Neil P. Cohen, Sarah Y. Sheppeard & Donald F. Paine, *Tennessee Law of Evidence* § 8.01[7] (4th ed. 2000).

statute of limitations, nevertheless, it was filed outside the period of the three-year statute of repose.[7] Hence, the trial court did not err in dismissing it on summary judgment.

D.

In the plaintiffs' motion to amend filed March 14, 2002, they assert, for the first time, claims of malpractice arising out of the June 24, 1999, surgery. Specifically, the plaintiffs claim that the defendant negligently left surgical gauze in the plaintiff's body in that second surgery. The plaintiff asserts that she first learned of this fact in August, 1999, when the defendant told her a nurse had left gauze in her body during the June 24, 1999, surgery. However, as previously noted, when the plaintiffs filed their initial lawsuit on June 12, 2000, there was no mention made of a claim for malpractice against the defendant arising out of the June 24, 1999, surgery. The first time such a claim is mentioned is in the plaintiffs' motion to amend. Accordingly, the plaintiffs' action is time-barred by the one-year statute of limitations, unless the plaintiffs can show that the new allegations in the amended complaint with respect to the June 24, 1999, surgery relate back to a claim asserted in a still-pending pleading filed within one year of August, 1999.

Tenn. R. Civ. P. 15.03 provides, in pertinent part, as follows:

> Whenever the claim or defense asserted in amended pleadings arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

The plaintiffs contend that, by referencing the June 24, 1999, surgery in their *original* complaint, they focused the defendant's attention on that surgery in a way that was sufficient to compel a holding that the allegations with respect to the June 24, 1999, surgery in the motion to amend relate back to the date of the original complaint. We disagree with the plaintiffs' approach to the issue of relation back under Rule 15.03.

It is clear to us that the proper application of Rule 15.03 in this case focuses on the *second* complaint filed on July 11, 2001, and not on the *first* complaint filed on June 12, 2000. This is because it is the second complaint – the pending one – that the motion seeks to amend. We believe that Rule 15.03 necessarily brings into play the complaint sought to be amended and not an earlier complaint long since dismissed.

What we said earlier about the reference to the second surgery in the plaintiffs' first complaint can also be said with respect to the same reference in the second complaint filed on July 11, 2001. *This is because the two complaints are identical.* Therefore, because the first surgery of April 10, 1997, is the sole "conduct, transaction, or occurrence" out of which the claims in the complaint of July 11, 2001, arose, the matters pertaining to the second surgery as set forth in the

---

[7]Tenn. Code Ann. § 29-26-116(a)(3).

motion to amend do not arise out of the factual predicate in the July 11, 2001, complaint, and, therefore, the doctrine of relation back does not apply. *See* **Gamble v. Hospital Corporation of America**, 676 S.W.2d 340, 347 (Tenn. Ct. App. 1984) (holding that "although the *subsequent operation* might arise out of the 'conduct, transaction or occurrence' in the original pleading, the *claim* of negligence in the second operation did not arise out of the 'conduct, transaction or occurrence' set out in the original pleading") (emphasis in original). The plaintiffs' claim with respect to the June 24, 1999, surgery accrued, under the plaintiffs' theory of the case, in August, 1999. The assertion of their claim in the March 14, 2002, motion to amend falls well outside the one-year statute of limitations in Tenn. Code Ann. § 29-26-116.

E.

Finally, the plaintiffs challenge the trial court's decision to grant the defendant summary judgment based upon his testimony that he was familiar with the applicable standard of care and that he did not violate it.

In order to prevail at trial in a medical malpractice case, a plaintiff is required to prove, through expert testimony, the following:

> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
>
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
>
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Tenn. Code Ann. § 29-26-115(a) (Supp. 2003); *see also* Tenn. Code Ann. § 29-26-115(b) (Supp. 2003). Furthermore, a defendant will not be presumed negligent, and a jury must be "instructed that injury alone does not raise a presumption of the defendant's negligence." *See* Tenn. Code Ann. § 29-26-115(c) & (d) (Supp. 2003).

In the defendant's deposition, he testified that he is familiar with the standard of care for practicing gynecologists in the Kingsport area and that he complied with that standard of care in his treatment of the plaintiff. Furthermore, the defendant established through his own testimony that he caused no injury to the plaintiff which otherwise would not have occurred, and that the plaintiff did not have a punctured urethra following the April 10, 1997, surgery.

Because the defendant negated, through his deposition testimony, all of the essential elements of the plaintiffs' case, the burden of proof shifted to the plaintiffs to prove, through expert medical testimony, the elements set forth in Tenn. Code Ann. § 29-26-115(a). However, the plaintiffs failed to provide the court with *any* expert testimony on these points. Instead, the plaintiffs attempted to negate the testimony of the defendant by calling into question the defendant's credibility.

In his deposition, the defendant was asked if he had been involved in other lawsuits. The defendant mentioned six other lawsuits, all related to medical malpractice. When asked if there were others, the defendant stated that "[t]here may be more of them" and "[t]hat's all I can recall right now." The plaintiffs, pointing out that the defendant had been involved – both as a plaintiff and a defendant – in over 60 lawsuits of various types in Sullivan County, argue that the defendant failed "to answer truthfully questions about his involvement in other lawsuits." In addition, when asked if he had ever been charged with any crimes, the defendant responded only that he had received speeding and parking tickets. The plaintiffs point out that, in Sullivan County, "there were two misdemeanor criminal cases naming him as a defendant and these involved wildlife violations."

Based upon the foregoing, the plaintiffs contend that the defendant is not to be believed and that, as a result, his testimony with respect to the standard of care should be considered controverted for the purposes of summary judgment. The plaintiffs rely upon the case of ***Knapp v. Holiday Inns, Inc.***, 682 S.W.2d 936 (Tenn. Ct. App. 1984), which provides that "doubt as to the credibility of material witnesses will create a genuine issue of material fact sufficient to render granting a summary judgment improper." ***Id.*** at 942. We do not believe that ***Knapp*** has precedential value in the instant case. ***Knapp*** involved the liability of the owner of a cocktail lounge for the wrongful death of an individual whose death allegedly resulted from the negligent driving of a co-defendant who had been drinking at the cocktail lounge just prior to the accident. ***Id***. at 938. In ***Knapp***, all known witnesses to the co-defendant's time at the cocktail lounge testified on summary judgment in support of the position of the owner of the lounge. ***Id***. In rejecting the lounge owner's argument that it was entitled to summary judgment, we said the following:

> This case presents a clear situation where a summary judgment is not proper because the outcome of this case rests solely upon the credibility of the witnesses who can be considered competent to testify from personal knowledge about [co-defendant] Norman Lane's demeanor and conduct while he was at Chuggers prior to the fatal accident. Mr. Knapp squarely challenged the credibility of these witnesses in the trial court and has sufficiently called the credibility of these witnesses into question to create a genuine issue of material fact.

***Id***. at 943.

In ***Knapp***, the witnesses whose credibility was attacked were all *fact* witnesses and their credibility or lack thereof was related directly to their versions of the events of the evening in

question.  In the case at bar, the issue of the defendant's credibility does not go directly to the defendant's *expert* testimony regarding whether he violated the standard of care in his treatment of the plaintiff.  The credibility issue in the instant case is peripheral to the substance of the defendant's testimony.

Because the plaintiffs failed to come forth with expert medical testimony to establish the required elements of their case when faced with the defendant's testimony negating those elements, we hold that the trial court did not err in granting summary judgment to the defendant.

IV.

The judgment of the trial court is affirmed.  This case is remanded to the trial court for the collection of costs assessed below, pursuant to applicable law.  Costs on appeal are taxed to the appellants, Peggy Bailey and Gary Bailey.

_____
CHARLES D. SUSANO, JR., JUDGE