IN THE SUPREME COURT OF TENNESSEE
October 6, 2021 Session

## DONNA COOPER ET AL. V. DR. MASON WESLEY MANDY ET AL.

**Appeal by Permission from the Court of Appeals
Circuit Court for Williamson County
No. 2018-191    James G. Martin III, Judge**

_____

## No. M2019-01748-SC-R11-CV

_____

The issue presented in this interlocutory appeal is whether the Health Care Liability Act, Tennessee Code Annotated sections 29-26-101 to -122, applies to medical battery and intentional misrepresentation claims against health care providers for injuries arising from a surgical procedure. The defendant doctor told the plaintiff he was an experienced board-certified plastic surgeon, and the plaintiff consented to surgery. But the doctor was not a board-certified plastic surgeon, and the surgery did not go well. The plaintiff and her husband sued the doctor and his medical practice for her injuries, alleging medical battery and intentional misrepresentation. The defendants moved to dismiss because the plaintiffs had not complied with the pre-suit notice and filing requirements of the Health Care Liability Act. The plaintiffs, conceding their noncompliance, argued the Act did not apply to their medical battery and intentional misrepresentation claims. The trial court agreed with the plaintiffs, ruling that the defendants' misrepresentations were made before any health care services were rendered and thus did not relate to the provision of health care services. On interlocutory review, the Court of Appeals affirmed. We reverse and hold that the Health Care Liability Act applies to the plaintiffs' claims. The Act broadly defines a "health care liability action" to include claims alleging that a health care provider caused an injury that related to the provision of health care services, regardless of the theory of liability. Based on the allegations in the complaint, the plaintiffs' medical battery and intentional misrepresentation claims fall within the definition of a "health care liability action" under the Act. We remand to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals
Reversed; Judgment of the Trial Court Reversed; Remanded to the Trial Court**

SHARON G. LEE, J., delivered the opinion of the Court, in which ROGER A. PAGE, C.J., and JEFFREY S. BIVINS and HOLLY KIRBY, JJ., joined.

J. Eric Miles and Brigham A. Dixson, Nashville, Tennessee, for the appellants, Mason Wesley Mandy, M.D. and Middle Tennessee Surgical Services, PLLC.

R. Dale Bay and Paul Jordan Scott, Nashville, Tennessee, for the appellant, NuBody Concepts, LLC.

G. Kline Preston, IV, Nashville, Tennessee, for the appellees, Donna Cooper and Michael Cooper.

Brie Allaman Stewart, Chattanooga, Tennessee, for the Amicus Curiae, Tennessee Defense Lawyers Association.

**OPINION**

**I.**

In September 2014, Plaintiff Donna Cooper met with Dr. Mason Wesley Mandy at NuBody Concepts, LLC in Brentwood, Tennessee, to discuss breast reduction surgery.[1] Dr. Mandy told Ms. Cooper he was a board-certified plastic surgeon with years of experience in performing the procedure. NuBody Concepts employee Rachelle Norris confirmed Dr. Mandy's designation as a board-certified plastic surgeon. Based on the representations by Dr. Mandy and Ms. Norris, Ms. Cooper agreed for Dr. Mandy to perform the breast reduction surgery and paid NuBody Concepts for the surgery. Dr. Mandy, however, was not board-certified as a specialist in any field.

Dr. Mandy operated on Ms. Cooper in October 2014. According to Ms. Cooper, the surgery was "unnecessarily painful," was performed in a "barbaric fashion in unsterile conditions," and "left her disfigured and with grotesque and painful bacterial infections."

In April 2018, the Coopers ("the Plaintiffs") filed suit in Williamson County Circuit Court against Defendants Dr. Mandy, NuBody Concepts, and Middle Tennessee Surgical Services, PLLC ("the Defendants").[2] The Plaintiffs sought to recover compensatory damages for Ms. Cooper's pain and suffering, permanent physical disfigurement, loss of enjoyment of life, and lost income, as well as for Mr. Cooper's loss of consortium. The Plaintiffs alleged that the Defendants intentionally misrepresented Dr. Mandy's qualifications and that Ms. Cooper would not have consented to the surgery if she had known Dr. Mandy was not a board-certified plastic surgeon; that the Defendants committed

---

[1] The Plaintiffs alleged these facts in their complaint. In reviewing a trial court's ruling on a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss, we assume the truth of factual allegations in the complaint. *Effler v. Purdue Pharma, L.P.*, 614 S.W.3d 681, 687 (Tenn. 2020).

[2] The Plaintiffs previously filed suit against the Defendants in 2015, voluntarily dismissed the case in 2017, and refiled within one year of the dismissal of the first action.

a medical battery because their false representations negated Ms. Cooper's consent to the surgery; and that the Defendants engaged in a civil conspiracy.

The Defendants moved to dismiss under Tennessee Rule of Civil Procedure 12.02(6) based on the Plaintiffs' failure to comply with the pre-suit and filing requirements of the Act.[3] The Plaintiffs, admitting their noncompliance with the Act, argued their claims were not for negligent care but for medical battery and intentional misrepresentation which were not covered by the Act. The Plaintiffs also asserted that even if the Act applied, strict compliance was not required because expert testimony was not needed to prove their claims.[4]

The trial court denied the motions, holding that the Health Care Liability Act did not apply because the Plaintiffs' claims for medical battery and intentional misrepresentation were based on false statements the Defendants made to Ms. Cooper before they established a doctor-patient relationship.[5] Thus, the Plaintiffs' action was not related to the provision of health care services, and compliance with the Act's procedural requirements was not required. On interlocutory review, the Court of Appeals also applied a temporal analysis, concluding the Health Care Liability Act did not apply because the Defendants' misrepresentations were made as part of their business operations before any health care services were provided. *Cooper v. Mandy*, No. M2019-01748-COA-R9-CV, 2020 WL 6748795, at *1 (Tenn. Ct. App. Nov. 17, 2020), *perm. app. granted* (Tenn. Apr. 7, 2021).

We granted the Defendants' application for permission to appeal. On interlocutory appeal, we limit our review to the issue certified by the trial court. *Dialysis Clinic, Inc. v. Medley*, 567 S.W.3d 314, 317 (Tenn. 2019) (citing *Wallis v. Brainerd Baptist Church*, 509 S.W.3d 886, 896 (Tenn. 2016)). Here, that issue is whether a claim for injuries arising from a surgical procedure to which the plaintiff consented is governed by the Health Care Liability Act when the claim is based on pre-surgical misrepresentations about the surgeon's credentials by the defendant health care providers. When a claim is governed by

---

[3] The Defendants claimed that the Plaintiffs failed to provide a HIPAA-compliant medical records authorization with the pre-suit notice letters; that the Plaintiffs failed to wait the required sixty days after sending the notice letters before filing suit; that the Plaintiffs' complaint failed to state compliance with the Act; and that the complaint did not include a copy of the pre-suit notice letters, certificates of mailing and affidavit, and a certificate of good faith. *See* Tenn. Code Ann. §§ 29-26-121 through -122 (2012 & Supp. 2021).

[4] The Plaintiffs also challenged the constitutionality of the Act. The trial court's ruling that the Act was constitutional is not an issue in this interlocutory appeal.

[5] The trial court also held that the Act did not apply to the civil conspiracy and loss of consortium claims.

the Act, failure to comply with the Act's requirements of pre-suit notice and a certificate of good faith may result in the dismissal of the action. *See Ellithorpe v. Weismark*, 479 S.W.3d 818, 828 (Tenn. 2015) (explaining that noncompliance with pre-suit notice requirements results in dismissal without prejudice and that failure to file a certificate of good faith when expert testimony is necessary results in dismissal with prejudice); *Foster v. Chiles*, 467 S.W.3d 911, 916 (Tenn. 2015) (citing *Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 553 (Tenn. 2013)) (same).

A motion to dismiss under Rule 12.02(6) is the appropriate way to challenge compliance with the Act's procedural requirements. *Ellithorpe*, 479 S.W.3d at 823 (citing *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012)).[6] A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint. In ruling on the motion, courts "must construe the complaint liberally," presume all alleged facts are true, and "giv[e] the plaintiff the benefit of all reasonable inferences." *Id*. at 824 (quoting *Phillips v. Montgomery Cnty.*, 442 S.W.3d 233, 237 (Tenn. 2014)). Our review of the trial court's decision involves a question of law and is de novo. We do not presume the correctness of the trial court's decision. *Effler v. Purdue Pharma, L.P.*, 614 S.W.3d 681, 688 (Tenn. 2020) (citing *State v. Strode*, 232 S.W.3d 1, 9 (Tenn. 2007)).

In interpreting the Health Care Liability Act, it is our role to give effect to the Legislature's intent without limiting or extending the meaning of the Act. *Stevens,* 418 S.W.3d at 553 (citing *Sullivan ex rel. Hightower Oil Co. v. Edwards Oil Co.*, 141 S.W.3d 544, 547 (Tenn. 2004); *Garrison v. Bickford*, 377 S.W.3d 659, 663 (Tenn. 2012)). Every word in the Act is presumed to have meaning and purpose. *Ellithorpe*, 479 S.W.3d at 827 (citing *Johnson v. Hopkins*, 432 S.W.3d 840, 848 (Tenn. 2013)). We give the words of the Act "their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose," and we apply the Act's plain meaning when it is clear, enforcing the statute as written. *Id.* (quoting *Johnson*, 432 S.W.3d at 848).

## II.

The dispositive issue here is whether the Plaintiffs are asserting a "health care liability action" as defined by the Health Care Liability Act. Tenn. Code Ann. § 29-26-101(a)(1) (2012 & Supp. 2021). Section 29-26-101 was enacted as part of the Civil

---

[6] The Defendants also moved for judgment on the pleadings under Rule 12.03, asserting the complaint failed to state a claim for which relief could be granted. The trial court denied the Defendants' Rule 12.03 motions, finding that the Plaintiffs had alleged sufficient facts to pursue their claims for intentional misrepresentation, medical battery, civil conspiracy, and loss of consortium. That ruling is not at issue in this interlocutory appeal.

Justice Act of 2011, which amended the Tennessee Medical Malpractice Act.[7] Among other things, the Civil Justice Act removed references to "medical malpractice," inserted references to "health care liability," and defined a "health care liability action."[8] The Civil Justice Act was enacted soon after this Court's decision in *Estate of French v. Stratford House*, 333 S.W.3d 546 (Tenn. 2011), *superseded by statute*, Tennessee Civil Justice Act of 2011, ch. 510, §§ 8–9, 2011 Tenn. Pub. Acts 1505, *as recognized in Ellithorpe*, 479 S.W.3d at 826–27. In *Estate of French*, we held that the Medical Malpractice Act applied only to claims with allegations bearing a "substantial relationship to the rendition of medical treatment by a medical professional" or involving "medical art or science, training, or expertise." *Id.* at 555–56. This meant that some claims of ordinary negligence against a health care provider were not subject to the Medical Malpractice Act's requirements of pre-suit notice and expert testimony. *Id.* at 555. Under *Estate of French*, Tennessee courts had to distinguish between claims involving ordinary negligence and claims involving medical malpractice. *Ellithorpe*, 479 S.W.3d at 825–26. But the Civil Justice Act statutorily abrogated *Estate of French*'s "'nuanced' approach for distinguishing ordinary negligence and health care liability claims." *Id.* at 827. In doing so, the Legislature expressed "a clear legislative intent" to broaden the scope of the Act to include every lawsuit against a health care provider that alleged an injury related to the provision of health care without regard to the theory of liability. *Id.*

Casting a broad net over claims against health care providers, section 29-26-101(a)(1) of the Health Care Liability Act defined a health care liability action as "any civil action . . . alleging that a health care provider or providers have caused an injury related to the provision of . . . health care services to a person, regardless of the theory of liability on which the action is based." Tenn. Code Ann. § 29-26-101(a)(1). Also, section -101(c) made "[a]ny such civil action or claim . . . subject to this part regardless of any other claims, causes of action, or theories of liability alleged in the complaint." Tenn. Code Ann. § 29-26-101(c).

We held in *Ellithorpe* that "[g]iving every word in this section its full effect and plain meaning," section 29-26-101 "establishes a clear legislative intent that *all* civil actions alleging that a covered health care provider or providers have caused an injury related to the provision of . . . health care services" be subject to the procedural requirements of the Act, "regardless of any other claims, causes of action, or theories of liability alleged in the complaint." 479 S.W.3d at 827. Neither the language of the Act nor our interpretation of section -101 has changed since we decided *Ellithorpe*. *See, e.g.*, *Newman v. State*, 586 S.W.3d 921, 925–26 (Tenn. Ct. App. 2019) (holding that the Act applied to a claim alleging negligence by staff in supervising and monitoring patients at a

---

[7] *See* Tennessee Civil Justice Act of 2011, ch. 510, §§ 8–9, 2011 Tenn. Pub. Acts 1505 (codified as amended at Tenn. Code Ann. § 29-26-101).

[8] *See id.* As a result, the Medical Malpractice Act became the Health Care Liability Act.

mental health facility because under section 29-26-101, the Act applies "*regardless of the theory of liability*" and health care services to persons "*includes staffing, custodial or basic care*"); *Zink v. Rural/Metro of Tenn., L.P.*, 531 S.W.3d 698, 705 & n.3 (Tenn. Ct. App. 2017) (citing *Ellithorpe* and noting that in previous ordinary negligence cases against health care providers, the claims were not subject to the Act because they were filed before the enactment of section 29-26-101 defining health care liability action); *Osunde v. Delta Med. Ctr.*, 505 S.W.3d 875, 883–85 (Tenn. Ct. App. 2016) (noting *Ellithorpe*'s holding that the "'nuanced' approach for distinguishing an ordinary negligence claim from a medical malpractice claim" had been abrogated by the Act's comprehensive definition of a health care liability action, and a claim alleging that a radiology technician provided a patient with a faulty stool when taking an x-ray was a health care liability action as defined by the Act).

Applying the clear language of section 29-26-101, we hold the Plaintiffs' medical battery and intentional misrepresentation claims are included within the definition of a "health care liability action." The Plaintiffs' complaint alleged that the Defendants are health care providers who caused injuries to Ms. Cooper during a surgical procedure. The complaint asserted "that *the surgical procedure* was unnecessarily painful, that it was done in a barbaric fashion in unsterile conditions and that it has left [Ms. Cooper] disfigured and with grotesque and painful bacterial infections." (Emphasis added). The complaint also stated that Ms. Cooper "sustained permanent physical disfigurement, pain and suffering, loss of enjoyment of life, lost income, strange bacterial infections *from the procedure*, and months of pain, not to mention the strain on her marriage." (Emphasis added). The complaint alleged medical battery and intentional misrepresentation, but the Act applies regardless of the theories of liability. Thus, the Plaintiffs are asserting a "health care liability action" as defined by section 29-26-101(a)(1), and the Act applies to their claims.

The Plaintiffs argue the Health Care Liability Act does not apply for several reasons. First, the Plaintiffs contend that the Defendants committed a medical battery when Dr. Mandy operated on Ms. Cooper because their misrepresentations negated her consent for surgery. A health care provider can be liable for medical battery by failing to obtain consent from a patient before performing a procedure even though the medical care was not negligently provided. *White v. Beeks*, 469 S.W.3d 517, 525 (Tenn. 2015). But here the Plaintiffs' claims against the Defendants, who are health care providers, are for injuries arising from the surgery, and the Act applies "regardless of the theory of liability." Before the enactment of the Civil Justice Act, including section 29-26-101, a medical battery claim may have been considered an ordinary tort claim and not subject to the Medical Malpractice Act.[9] But that changed when the Legislature statutorily abrogated *Estate of French* by

_____

[9] *See Estate of French*, 333 S.W.3d at 556 (explaining that not every case against a health care provider qualified as a medical malpractice claim); *Bailey v. Tasker*, 146 S.W.3d 580, 585 (Tenn. Ct. App.

adopting a broad definition of "health care liability action" in section 29-26-101(a)(1) that included claims against health care providers "regardless of the theory of liability on which the action is based." Tenn. Code Ann. § 29-26-101(a)(1). The Legislature was purposeful in defining "health care liability action" in section 29-26-101(a)(1) broadly enough to "cast[] a wide net over civil claims that arise within a medical setting." *Cordell v. Cleveland Tenn. Hosp., LLC*, 544 S.W.3d 331, 336 (Tenn. Ct. App. 2017). Because this definition is so broad, most claims arising in a medical setting will be health care liability claims. *Osunde*, 505 S.W.3d at 884–85. Under this expansive definition, the Plaintiffs cannot avoid the scope of the Act by alleging a health care provider committed medical battery and intentional misrepresentation when the claim relates to the health care service provided.

Second, the Plaintiffs contend that the Act does not apply because the Defendants' misrepresentations were commercial and were made before Dr. Mandy and Ms. Cooper established a doctor-patient relationship. According to the Plaintiffs, Dr. Mandy and Ms. Norris misstated Dr. Mandy's qualifications during a "sales meeting" to gain Ms. Cooper's agreement to the procedure before any health care services were provided. But this temporal view focuses entirely on the surgical procedure and ignores the necessary role of the doctor-patient informed consent discussion in the provision of health care services. Before surgery, Dr. Mandy had a duty to share with Ms. Cooper enough information about the procedure to enable her to give informed consent for him to proceed. *Miller ex rel. Miller v. Dacus*, 231 S.W.3d 903, 907 (Tenn. 2007) (quoting Tenn. Code Ann. § 29-26-118). This information typically includes the reason for performing the procedure, the risks and benefits of the procedure, the chances for a successful outcome, and any alternative treatments available. *Id.* (quoting *Shadrick v. Coker*, 963 S.W.2d 726, 732 (Tenn. 1998)). Without Ms. Cooper's informed consent, Dr. Mandy had no authority to perform the surgery. *See Shadrick*, 963 S.W.2d at 732 (quoting *Cardwell v. Bechtol*, 724 S.W.2d 739, 751 (Tenn. 1987)) (explaining that a procedure performed without informed consent is a battery). It was during the informed consent meeting that Dr. Mandy and Ms. Norris misrepresented Dr. Mandy's credentials. Under the Health Care Liability Act, a standard of care applies to the doctor-patient informed consent discussion. *See* Tenn. Code Ann. § 29-26-118.[10] Thus, a plaintiff alleging an injury because a health care provider

2004) (noting that an informed consent claim would be governed by the statute of limitations for a medical malpractice suit, but a medical battery claim was subject to the statute of limitations for an ordinary tort claim alleging injury to the person).

> [10] In a health care liability action, the plaintiff shall prove by [competent expert testimony] that the defendant did not supply appropriate information to the patient in obtaining informed consent (to the procedure out of which plaintiff's claim allegedly arose) in accordance with the recognized standard of acceptable professional practice in the profession and in the specialty, if any, that the defendant practices in the community in which the defendant practices and in similar communities.

Tenn. Code Ann. § 29-26-118 (2012).

failed to provide enough information about a medical procedure must comply with the Act. *See White*, 469 S.W.3d at 526. The informed consent discussion, by its nature, has to occur before the surgical procedure, but its timing does not mean it is not a part of the provided health care service.

The Plaintiffs cite *Lacy v. Mitchell*, 541 S.W.3d 55 (Tenn. Ct. App. 2016), to support their argument. In *Lacy*, the plaintiff alleged two injuries. The first occurred when the defendant chiropractor "jumped on her back" during treatment while the plaintiff was lying on the chiropractic table. *Id.* at 60. The second injury occurred when the defendant chiropractor was walking out the door and hit the plaintiff on the back with a medical folder. *Id.* at 61. The *Lacy* court held that the Act applied to the first injury because it occurred while the plaintiff was receiving treatment. *Id.* at 60. But because the complaint alleged that the second injury occurred as the chiropractor was walking out the door, the Court of Appeals decided it was reasonable to infer that this incident happened after the chiropractor had ended the treatment session and was leaving the exam room. Thus, the Court of Appeals held the Act did not apply to the second injury.[11] *Id.* at 61. *Lacy,* however, is not on point. Here, the Defendants' misrepresentations were made during the doctor-patient informed consent discussion—an important and essential part of the health care service. The Court of Appeals failed to recognize that the informed consent discussion was part of the Defendants' provision of health care services.

The Court of Appeals also erred by relying on *Franks v. Sykes*, 600 S.W.3d 908 (Tenn. 2020). *Cooper*, 2020 WL 6748795, at *7, *9. In *Franks*, this Court held that a patient could bring a claim against a health care provider under the Tennessee Consumer Protection Act for "an injury caused by [the] health care provider's business practices— including, but not limited to, deceptive practices in advertising, billing, or collections." *Franks*, 600 S.W.3d at 914. The plaintiffs in *Franks* had been injured in car accidents and were treated at local hospitals. *Id.* at 910. The hospitals did not file claims with the plaintiffs' health insurance companies, which would have reduced the hospitals' charges to the discounted amounts they had contractually agreed to charge the insurance companies. *Id.* The hospitals instead filed liens for the full, undiscounted hospital bills against the plaintiffs' potential tort claims arising from the car accidents.[12] *Id.* The plaintiffs sued the hospitals, alleging that the filing of these liens was an unlawful business practice under the Tennessee Consumer Protection Act. *Id.* The plaintiffs' claims were not health care liability claims because they alleged neither that the hospitals failed to provide proper

---

[11] In deciding the certified issue in this interlocutory appeal, we need not address whether the Act applies to both health care liability claims and non-health care liability claims asserted in one lawsuit.

[12] Under the Hospital Lien Act, a hospital "shall have a lien for all reasonable and necessary charges for hospital care . . . upon any and all causes of action . . . accruing to the person to whom such care . . . was furnished . . . on account of illness or injuries giving rise to such causes of action . . . and which necessitated such hospital care." Tenn. Code Ann. § 29-22-101(a) (2012).

medical treatment nor that the plaintiffs suffered any injuries from the medical treatment they received. *Id.* at 915.

Unlike the plaintiffs in *Franks*, the Plaintiffs here alleged that the surgery caused Ms. Cooper to sustain physical injuries and other damages: "*the surgical procedure* was unnecessarily painful, . . . it was done in a barbaric fashion in unsterile conditions and . . . it has left [Ms. Cooper] disfigured and with grotesque and painful bacterial infections." (Emphasis added). The Plaintiffs also alleged that Ms. Cooper "sustained permanent physical disfigurement, pain and suffering, loss of enjoyment of life, lost income, [and] strange bacterial infections *from the procedure*." (Emphasis added). Thus, it was not the Defendants' false statements that caused Ms. Cooper's injuries, but the unsuccessful surgery performed by Dr. Mandy.

Finally, the Plaintiffs contend that compliance with the Act is not necessary because their medical battery claim requires no expert testimony. Although a medical battery claim may not require expert proof,[13] section 29-26-101(a)(1)'s definition of a "health care liability action" contains no exemption for cases not requiring expert testimony.[14] We cannot narrow the scope of the Act by adding exclusionary language.

## CONCLUSION

We hold that the Health Care Liability Act, section 29-26-101, broadly defines a "health care liability action" to include claims alleging that a health care provider caused an injury related to the provision of health care services, regardless of the theory of liability. Based on the allegations in the complaint, the Plaintiffs' medical battery and intentional misrepresentation claims fall within the scope of the Act. We reverse the judgments of the Court of Appeals and the trial court, and we remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal to Donna Cooper and Michael Cooper, for which execution may issue if necessary.

_____
SHARON G. LEE, JUSTICE

---

[13] *Blanchard v. Kellum*, 975 S.W.2d 522, 524 (Tenn. 1998).

[14] Under Tennessee Code Annotated section 29-26-122, a plaintiff filing a health care liability action need not file a certificate of good faith with the complaint when expert testimony is not required by Tennessee Code Annotated section 29-26-115. However, neither the definition of "health care liability action" in section 29-26-101(a)(1) nor the pre-suit notice requirements of section 29-26-121 contain an expert testimony provision.