# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### November 18, 2009 Session

## STEPHEN GEORGE BEEM v. JOAN NAN GALLINA BEEM

**An Appeal from the Circuit Court for Shelby County**
**No. CT-00745-08     Walter C. Kurtz, Senior Judge**

---

**No. W2009-00800-COA-R3-CV - Filed April 28, 2010**

---

This appeal involves a motion to set aside a marital dissolution agreement. After a long marriage, the parties filed cross-petitions for divorce. After mediation, they entered into a marital dissolution agreement settling division of the considerable martial estate. The parties presented the MDA to the trial court, and it was approved and incorporated into the final decree of divorce. Several weeks later, the husband filed this *pro se* petition to have the MDA set aside, claiming that, at the time it was signed, he was not mentally competent to enter in to such an agreement. The husband's motion was denied, and the wife was awarded attorney fees pursuant to the terms of the MDA. The husband now appeals. We affirm. We hold that the evidence supports the factual finding below that the husband was mentally capable of understanding the consequences of the MDA, and we find no abuse of its discretion in the trial court's denial of the husband's motion to set it aside. We also affirm the award of attorney fees to the wife, and award attorney fees for this appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Leah Lloyd Hillis, Memphis, Tennessee, for the appellant, Stephen George Beem[1]

Amy J. Amundsen, Memphis, Tennessee, for the appellee, Joan Nan Gallina Beem

---

[1]Husband represented himself in the proceedings below, and on appeal, he wrote his own appellate brief. Attorney Hillis was retained to represent Beem on appeal for purposes of oral argument.

# OPINION

Plaintiff/Appellant Stephen George Beem ("Husband") and Defendant/Appellee Joan Nan Gallina Beem ("Wife") were married in September 1973.[2] Husband is an attorney who practiced for many years in Shelby County, Tennessee. In 2005, Husband opened a law practice in Deer Valley, Utah. He began to spend much of his time there establishing his practice, living part of the time in Utah and part of the time in Tennessee with Wife.[3] Wife owned property in Utah and spent some time there with Husband. Husband now resides primarily in Utah.

By January 1, 2007, the parties had officially separated. Husband was devastated by the deterioration of his marriage and sought treatment for depression. In contemplation of their eventual divorce, the parties tried to negotiate a marital dissolution agreement ("MDA") out of court in order to amicably resolve the division of their marital property. As part of the negotiations, Husband submitted to Wife three different MDA drafts; none were accepted. After their negotiations broke down, in February 2008, the parties filed cross petitions for divorce, both alleging inappropriate marital conduct and irreconcilable differences.[4]

At the time the divorce petitions were filed, the parties had assets worth between $7,000,000 and $10,000,000. The classification and equitable division of these assets were issues that were hotly contested. On June 16, 2008, the trial court entered a scheduling order that established discovery deadlines and set the trial for July 22, 2008. At the time, Husband was represented by Shelby County attorney David Caywood ("Caywood"). Husband urged Caywood to seek a continuance of the trial date to permit adequate time for discovery, but Caywood advised Husband that it would be inappropriate to do so.

By agreement, the parties entered into mediation before retired Judge George Brown ("Judge Brown") on July 21, 2008, the day before the scheduled trial. The mediation was lengthy and involved, lasting into the evening. It yielded handwritten notes that became the substance of an agreement between the parties. Overnight, counsel for Wife reduced the notes to a 22-page formal Marital Dissolution Agreement ("MDA").

---

[2]The parties have two adult children born of the marriage.

[3]In 2006, when Husband was summoned for federal jury duty in Tennessee, he claimed that he was a resident of Utah.

[4]The case was assigned to Senior Judge Walter C. Kurtz.

The next day, on the morning of the scheduled trial, the parties appeared before the trial court at 9:00 a.m., announced a settlement, and requested additional time to execute and file the MDA. Before signing the MDA, however, Husband asked for the addition of an addendum, relieving him of responsibility for certain debts he owed to Wife. Wife agreed, and this addendum was added to the MDA. The parties signed the MDA with the addendum attached. After doing so, the parties returned to the trial court, announced their agreement, and presented the executed MDA. Husband and Wife were both sworn in as witnesses, and both testified that they desired to enter into the MDA. Attorney Caywood stated in open court that the MDA "was gone over very carefully last night and, in fact, before we left, . . . the parties signed a four or five-page handwritten document, so they've had all night to think about it yesterday . . . ." Husband and Wife signed each page of the MDA and sought the trial court's approval of it. The trial court approved the MDA that day and incorporated it into the final decree of divorce.[5]

On or around September 10, 2008,[6] Husband filed a *pro se* motion pursuant to Rule 60.02(5) of the Tennessee Rules of Civil Procedure, seeking to set aside the final decree of divorce and the MDA. In the motion, Husband claimed that, at the time he executed the MDA, he was suffering from a mental incapacity and his rationality was compromised by serious depression. Because of this mental incapacity, Husband claimed, it would be "unfair, inequitable, and not in the furtherance of the administration of justice to not relieve him from the Final Decrees [sic] and Marital Dissolution Agreement that he signed and agreed to under duress and without the benefit of a clear mind." Attached to this motion was Husband's own affidavit and a statement by his physician, Joseph Fritter, M.D. ("Dr. Fritter"). In the statement, Dr. Fritter said that Husband was "being treated for major depressive disorder," beginning in January 2008 and continuing to the date of the statement, and that any decisions made by Husband during his treatment for this condition would be compromised.

Shortly after Husband filed this *pro se* motion, in October 2008, the trial court entered a consent order allowing attorney Caywood to withdraw from representing Husband.

After Husband filed his motion to set aside the MDA, the parties engaged in significant discovery. Wife noticed the depositions of retired Judge Brown, Attorney Caywood, and Husband's friend William Schrader ("Schrader"). Husband filed a motion to quash the depositions, but the motion was denied.

---

[5]On August 11, 2008, the trial court entered an amended final decree of divorce to correct a clerical error in the original decree.

[6]The date on which this document was filed is not clear in the record; however, the parties both assert in their briefs that the document was filed on September 10, 2008.

In an order dated January 14, 2009, the trial court found that Husband was entitled to a hearing on his motion. The hearing was scheduled for March 2, 2009.

On February 13, 2009, two weeks before the scheduled hearing on the motion to set aside, Husband filed a motion for a continuance of the hearing to give him an opportunity to retain counsel. A few days later, the trial court denied the motion for a continuance, noting that Husband had chosen "to represent himself and has filed a number of pleadings in support of his motion to set aside the settlement. His motion has been pending since September 2008. . . . [H]e waits until February 13, 2009, to file his request."

The hearing on Husband's motion to set aside was conducted as scheduled on March 2, 2009. Husband appeared *pro se* and called and questioned witnesses. At the outset of the hearing, he called two friends to testify on his behalf, William Schrader and Jeffrey Salberg. Schrader, a Tennessee resident, testified that between January and September 2008, Husband seemed unfocused, mentally confused, despondent, and deeply depressed. Husband stayed with Schrader overnight on July 21, 2008, the night of the parties' mediation with Judge Brown. When Husband returned from signing the MDA, Schrader said he seemed to be "in a state of confusion and . . . eaten alive with the stress and distraught." Schrader testified that Husband reported that he had capitulated to Wife's demands in the MDA. When Husband asked Schrader at the hearing if it seemed that Husband knew the consequences of his actions in signing the MDA, counsel for Wife objected. The trial court sustained the objection. The trial court asked Husband if he wanted to make an offer of proof to preserve the issue for appeal, but Husband declined to do so.

Husband next called Salberg, an attorney with whom Husband had worked in Utah since December 2005. Salberg testified that, prior to January 2008, Husband was socially engaging and confident. After January 2008, he said, Husband became withdrawn and had trouble staying focused on a task. He described Husband as struggling to manage his law practice, and "in such a mental status to truly not understand what was going on in regards to [his] divorce . . . [and Husband's] thinking was not coherent in that area at all." In response to Husband's question at the hearing, Salberg said that he could not "believe that somebody allowed you to sign that [MDA] in the state of mind that you were in." He opined that Husband "didn't understand the nature of what was going on, in my opinion, and he didn't understand the consequences that were going to follow." Salberg acknowledged, however, that in Summer 2008, Husband was able to manage his own personal affairs and was competent to represent another client and settle a case.

The trial court also heard testimony from Dr. John Robert Taylor ("Dr. Taylor"), a clinical psychologist who treated Husband in Utah for his mental problems, beginning in October 2008 and continuing until the date of the hearing on Husband's motion to set aside. By

November 2008, Dr. Taylor diagnosed Husband with "major depressive disorder." He noted that, at that time, Husband's mood symptoms included feelings of hopelessness, helplessness, and an inability to experience pleasure; his physical symptoms included insomnia and loss of appetite. From how Husband described the summer of 2008, Dr. Taylor surmised that, in his professional opinion, at the time Husband signed the MDA, he would have been suffering from the same condition and would have been at an even more impaired level. In his opinion, when Husband signed the MDA in July 2008, Husband's ability to make rational and considered decisions was "severely compromised," even though he may have appeared to have been functioning normally. On cross-examination, Dr. Taylor clarified that he was not "making a diagnosis of [Husband's] mental faculties on July the 22nd, 2008."

Husband took the witness stand and testified in a narrative fashion on his own behalf. He testified that, for a period of time, he took anti-depressant medication but stopped taking it sometime in the early summer of 2008. He described the time period between February and August of 2008 as "all a blur," stating that he seemed to be in a fog, and that the divorce proceedings "went so fast." He testified that he "wasn't capable of making a decision in July 2008," and that he failed to appreciate the level of his cognitive impairment until later. Husband saw Dr. Ferriter for his symptoms in August 2008, who recommended that he see Dr. Taylor. Husband explained that he was unable to meet with Dr. Taylor until October 2008.

Wife called as a witness Dr. John Leite ("Dr. Leite"), a clinical psychologist. Dr. Leite had not examined Husband, but had reviewed his medical records and other data. He concluded that in July 2008, Husband was mentally competent to enter into the MDA.

Wife testified on her own behalf. She first recounted the events of the mediation and the parties' negotiation of the terms of the MDA. On the morning after the mediation, she said, Husband raised some additional issues, which were addressed in the addendum to the MDA. Wife believed that Husband was trying to punish her by filing the motion to set aside, and commented that he "knew exactly what he was doing. I think he knew it the whole time . . . ." Wife testified that she had incurred $40,014.59 in attorney fees, not including expert witness fees and lawsuit expenses, in defending against Husband's motion to set aside the MDA.

In addition to the testimony, the trial court also considered the affidavit of Judge Brown, who spent considerable time with the parties during the mediation. In his affidavit, Judge Brown stated that both Husband and Wife understood the mediation process and "appeared mentally competent." Judge Brown averred that Husband "appeared lucid and mentally capable of making and receiving the offers and counter-offers that were made between the parties," and that he "knew the assets and was able to participate fully in the process." Judge Brown also

stated that he, as the mediator, "would not have allowed [Husband] to sign the mediated handwritten agreement if [he] noticed any confusion or incapacity on his part." He further stated that Husband "did not appear to be lacking in cognitive thinking," and "did not appear to lack mental capacity to enter into a binding contract." Judge Brown said that the parties left his office "acknowledging they reached an agreement, settled the case and thanked me for my services."

The trial court also considered the deposition testimony of Attorney Caywood. Caywood stated that, from his observation, Husband did not seem emotionally or cognitively impaired during the mediation. Caywood testified, "I saw no observations to make me feel uncomfortable about [Husband's] cognitive abilities. And on the morning . . . we went . . . to present this settlement, I saw nothing to disturb me or cause me concern about his cognitive functioning on that day." Caywood said that Husband "was desirous of getting the matter resolved, like any rational person would." He noted that at no time did Husband inform either him or Judge Brown that he felt that he was mentally impaired. Caywood said that he reviewed the MDA with Husband before he signed it, and Caywood thought that Husband was capable of making a rational decision regarding the division of the parties' property at that time. Caywood believed that the agreement the parties reached was "within the range of what a Court might do after considering the facts and the law." After the hearing, the trial court took the matter under advisement.

On March 17, 2009, the trial court entered an order denying Husband's motion to set aside the MDA. Initially, the trial court observed that the burden of proof is high for a party seeking to have a contract declared unenforceable based on the party's emotional state, and the burden is rarely met. The trial court found that Husband was required to show that he "had no reasonable perception or understanding of the nature or terms of the contract" he sought to avoid. *Roberts v. Roberts*, 827 S.W.2d 788, 791-92 (Tenn. Ct. App. 1991). After considering the testimony at the hearing and the other evidence presented, the trial court found:

> 1. Husband had an active law practice in July 2008 when the MDA was signed.
> 2. At the time, neither Husband's attorney nor the mediator noticed any difficulty in Husband's ability to understand the agreement.
> 3. When the settlement was announced in open court, Husband signed every page of the MDA, testified that he understood it and agreed to it and requested an addendum to it.
> 4. Husband's discovery responses and prior deposition testimony indicated that he had no psychological or medial problems.

5.  Husband's testifying psychologist did not evaluate him until after he filed his motion to set aside.

Based on these findings of fact, the trial court held that Husband did not sustain his burden of proving that he was mentally incapable of entering into the MDA. Thus, the trial court declined to set aside the MDA. Wife was awarded $35,000 in attorney fees pursuant to a clause in the MDA providing for an award of such fees "to the party seeking to enforce this agreement." From this order, Husband now appeals.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Husband argues that the trial court erred in (1) refusing to grant his motion for a continuance; (2) sustaining Wife's objection to the testimony of Schrader concerning his lay observations of the state of mind of Husband on the evening of July 21, 2008; (3) finding that Husband failed to prove that he was mentally impaired at the July 21, 2008 mediation; and (4) awarding Wife $35,000 in attorney fees pursuant to the MDA.

Generally, we review a trial court's factual findings *de novo* on the record, presuming those findings to be correct, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *see Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). We review a trial court's conclusions of law *de novo*, with no such presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). More specific standards of review are set forth in our analysis of particular issue raised on appeal.

## ANALYSIS

### *Continuance*

We first address Husband's argument that the trial court erred in denying his request for a continuance of the hearing on his motion to set aside the MDA to give him an opportunity to retain counsel. A trial court's decision to grant or deny a motion for a continuance is within the court's sound discretion; therefore, its decision is reviewed for an abuse of discretion. *See Bailey v. Tasker*, 146 S.W.3d 580, 584 (Tenn. Ct. App. 2004). In determining whether the trial court abused its discretion in denying a motion for continuance, "we must consider (1) whether the decision has a sufficient evidentiary foundation; (2) whether the trial court correctly identified and properly applied the appropriate legal

principles; and (3) whether the decision is within the range of acceptable alternatives." ***Liberty Mut. Ins. Co. v. Friendship Home Health Agency, LLC***, No. M2007-02787-COA-R3-CV, 2009 WL 736659, at *3 (Tenn. Ct. App. Mar. 19, 2009); ***see also Comm'r of Dep't of Transp. v. Hall***, 635 S.W.2d 110, 111 (Tenn. 1982) ("[I]n order to show an abuse of discretion, the plaintiff must show some prejudice or surprise which arises from the trial court's failure to grant the continuance."). This standard "does not permit an appellate court to merely substitute its judgment for that of the trial court." ***Henry v. Goins***, 104 S.W.3d 475, 479 (Tenn. 2003).

Husband argues that the trial court abused its discretion in denying his request for a continuance, because the trial court's failure to allow him time to obtain counsel clearly prejudiced and injured him. He claims that he needed counsel to represent him at the hearing because he was too emotionally involved in the case to effectively represent himself. Husband points out that the trial court did not grant his request for an evidentiary hearing until January 14, 2009. At that time, he claims, he had unforeseen difficulty in obtaining counsel; in the weeks following the January 14, 2009 order, he contacted three Memphis attorneys and all declined to take his case. In representing himself, Husband maintains, he made numerous mistakes, including his failure to cross-examine Wife, to request a recess following the direct examination of Dr. Leite, and to counter Wife's objection to Schrader's testimony regarding Husband's state of mind. Given these mistakes and considering the record as a whole, Husband argues, the trial court abused its discretion in declining to grant him a continuance to obtain counsel.

In its order denying Husband's motion for a continuance, the trial court noted that, since September 2008, Husband had represented himself and had fully participated in the proceedings before the court, but waited until two weeks before the scheduled hearing to request a continuance for the purpose of retaining counsel. In denying the continuance, the trial court commented: "The motion to set aside the divorce settlement needs to be resolved." We agree. Although the evidentiary hearing was not set until January 14, 2009, Husband filed his motion to set aside in September 2008, in which he requested such a hearing. He must have expected, indeed hoped, that the trial court would grant his request for a hearing at some point. Under these circumstances, we cannot conclude that the trial court abused its discretion in denying Husband's request for a continuance to obtain counsel.

### *Schrader Testimony*

Husband argues that the trial court erred in refusing to permit Schrader to testify as to his lay opinion of Husband's mental state of mind on the evening of the parties' mediation. Wife argues that Husband waived this argument, because he failed to make an offer of proof when given the opportunity to do so by the trial court. ***See Howard G. Lewis Constr. Co. v. Lee***,

830 S.W.2d 60, 67 (Tenn. Ct. App. 1992) (failing to make an offer of proof "constituted waiver" of the right to have the issue heard on appeal), *overruled on other grounds*, *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920 (Tenn. 1998). However, even if the issue were properly preserved for appeal, Wife claims, the trial court did not abuse its discretion in precluding Schrader's testimony. In addition, Wife claims that, even if the trial court erred in disallowing his testimony on this point, it was harmless error, because the trial court gave controlling weight to the opinions of the witnesses who were involved in the mediation process, and gave very little weight to the lay opinion testimony. *See* Tenn. R. App. P. 36(b).

We find no reversible error in the trial court's decision to disallow Schrader's lay opinion testimony. At the time, Schrader had been permitted to fully describe what he observed about Husband at the time he executed the MDA. In the exchange at issue, Husband asked Schrader, "[D]o you think I knew the consequences of what I was doing [on July 21, 2008]?" Although Husband declined the opportunity to make an offer of proof, we may presume from Schrader's overall testimony that his response would have been "no." Had Schrader's response to this question been permitted, from the trial court's explanation of its reasoning in the final order, it would not have made a difference in the outcome. The trial court assigned significant weight to the testimony of Attorney Caywood and Judge Brown, who were involved in the signing of the MDA, and clearly weighed it more heavily than the opinion testimony of Husband's friends, who were not closely involved in the transaction. Therefore, even if disallowing Schrader's response to Husband's question was error, we find that it was harmless under the circumstances. *Tire Shredders, Inc. v. ERM-North Cent., Inc.*, 15 S.W.3d 849, 859 (Tenn. Ct. App. 1999); *See* Tenn. R. App. P. 36(b).

### *Denial of Motion to Set Aside*

Husband argues that the trial court abused its discretion in denying his motion to set aside the final decree of divorce and the MDA, pursuant to Rule 60.02(5), based on his inability to understand the consequences of his agreement at the time it was made. Under Rule 60.02(5), a trial court may relieve a party from a final order based on "any . . . reason justifying relief from the operation of the judgment." Tenn. R. Civ. P. 60.02(5). On appeal, Husband argues that the preponderance of the evidence supported his contention that he lacked the mental capacity to enter into the MDA, based on his severe psychological depression.

The trial court correctly noted that it is rare indeed for a court to find that a contract is unenforceable based on the unsound emotional state of a contracting party. The party seeking to avoid a contract on this basis must show that he or she "had no reasonable perception or understanding of the nature or terms of the contract." *Roberts*, 827 S.W.2d at 791-92. This Court has explained the burden of proof for a party seeking to avoid a contract:

Thus, persons will be excused from their contractual obligations on the ground of incompetency only when (1) they are unable to understand in a reasonable manner the nature and consequences of the transaction or (2) when they are unable to act in a reasonable manner in relation to the transaction, and the other party has reason to know of their condition.

*McMahan v. McMahan*, No. E2004-03032-COA-R3-CV, 2005 WL 3287475, at *7 (Tenn. Ct. App. Dec. 5, 2005).

Moreover, a trial court's decision to grant or deny a Rule 60.02(5) motion is a matter within the discretion of the trial court. This "escape valve" should be narrowly construed. *See Federated Ins. Co. v. Lethcoe*, 18 S.W.3d 621, 624 (Tenn. 2000). Therefore, we review the decision of the trial court below under an abuse of discretion standard. *Henry*, 104 S.W.3d at 479.

The trial court's order on Husband's motion to set aside clearly shows the court's careful evaluation of the evidence. The trial court first noted that Attorney Caywood and Judge Brown had both worked closely with Husband at the time the MDA was being negotiated, and both maintained that Husband was not mentally incompetent when he signed the MDA. The trial court also recalled that Husband had signed each page of the MDA, had suggested the last-minute addendum, and had assured the trial judge in open court that he understood the agreement and concurred in it. The trial court also found it probative that, in his discovery responses and in his July 2008 deposition, Husband stated that at no time did he have "a medical [or] psychological" problem.

The trial court recognized Dr. Taylor's expertise and professional competence, and did not doubt his diagnosis that Husband was depressed. It noted, however, that Husband did not visit Dr. Taylor for psychological treatment under after he filed his Rule 60 motion to have the decree and the MDA set aside. Assuming that Husband was depressed, the trial court found that his depression did not rise to the level of a disabling mental incapacity and did not interfere with his cognitive abilities. The trial court observed that "[m]any persons going through divorces are depressed but that does not lessen their legal abilities to enter into contracts or to settle lawsuits. Depression alone does not invalidate a contract." Even given Dr. Taylor's professional competence, the trial court did "not credit his ability to extrapolate back to July 22, 2008, and accurately determine Mr. Beem's mental state." In weighing the evidence, the trial court placed "more confidence" in the testimony of Attorney Caywood and Judge Brown, "who interacted with [Husband] on July 22, 2008, and during the negotiations which led to the settlement." Ultimately, therefore, the trial court held that "[t]he evidence here, even by a preponderance standard (no less — clear and convincing), does not sustain [Husband's] assertion that he lacked sufficient mental capacity to enter into the agreement."

-10-

From our review of the record, the trial court's decision appears to be a well-reasoned and clear-eyed assessment of the evidence, based in part on its determination of the credibility of the witnesses. The trial court is in the best position to assess the demeanor of the witnesses and to make judgments regarding the credibility of the witnesses. To the extent that the trial court's decision was based on witness credibility, we will not reverse that decision absent clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). Considering the record overall, we agree with the trial court that Husband simply did not carry the heavy burden placed on him to prove that he was unable to understand the nature and consequences of his actions, or that he was unable to act in a reasonable manner when he signed the MDA. Thus, we find sufficient evidence to support the trial court's finding that Husband was mentally capable of executing the MDA and conclude that the trial court did not abuse its discretion in denying Husband's motion to set the aside the divorce decree and the MDA.

### *Attorney Fees*

Husband argues that the trial court's award of $35,000 in attorney fees to Wife was beyond the scope of the provision in the MDA on attorney fees. He acknowledges that the MDA permits the prevailing party to recover attorney fees in an action to "enforce" the agreement, but maintains that this was not an action to "enforce" the agreement. Rather, he claims that he had performed all of his obligations under the MDA, and that his motion instead sought to set it aside based on his mental incapacity. Alternatively, he claims that the amount of the fee award was excessive and based on an insufficient record.[7]

The issue of whether the attorney fee award was within the scope of the relevant provision in the MDA is an issue of law, which we review *de novo* on the record, affording no presumption of correctness to the trial court's decision. *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006); *Frizzell Constr. Co. v. Gatlinburg, LLC*, 9 S.W.3d 79, 85 (Tenn. 1999). If an award of attorney fees is provided for in the MDA, the trial court has the discretion to determine whether the amount of the fee requested is reasonable. *See Airline Constr. Inc. v. Barr*, 807 S.W.2d 247, 270 (Tenn. Ct. App. 1990). Therefore, if an attorney fee award was proper under the parties' MDA, we must determine whether the trial court abused its discretion in the amount of the fee awarded. *See Metro. Gov't of Nashville v. Brown*, No. M2008-02495-COA-R3-CV, 2009 WL 5178418, at *8 (Tenn. Ct. App. Dec. 30, 2009).

---

[7]This argument was made in the first instance in Husband's reply brief.

The relevant provision in the MDA provides:

> Should either party incur any expense or legal fees in a successful effort to enforce this marital dissolution agreement, in whole or in part, the Court SHALL award reasonable attorney's fees and suit expenses to the party seeking to enforce this agreement. No breach, waiver, failure to seek strict compliance, or default of any of the terms of this agreement shall constitute waiver of any subsequent breach or default of any of the terms of this agreement.

Thus, the agreement provides that attorney fees "shall" be awarded to the party who makes a successful effort "to enforce" the MDA. The trial court found this provision to be applicable in this case, stating that Husband's "assault on the marital dissolution agreement to invalidate it by way of Rule 60.02(5) has caused [Wife] considerable expense in 'enforcing' the agreement." Wife requested fees of $46,877.59 and submitted an affidavit to support the fee request; however, the trial court granted an attorney fee award to Wife of $35,000.

The "cardinal rule" of contract construction is to ascertain the intent of the parties and to effectuate that intent consistent with applicable legal principles. *Frizzell Constr. Co. v. Gatlinburg, LLC*, 9 S.W.3d 79, 85 (Tenn. 1999). When the language of the contract is plain and unambiguous, courts determine the intent of the parties from the four corners of the contract, interpreting and enforcing it as written. *Int'l Flight Ctr. v. City of Murfreesboro*, 45 S.W.3d 565, 570 (Tenn. Ct. App. 2000).

From our review, the attorney fee provision in the parties' MDA is clear and unambiguous, and applies in this case. Wife was not attempting to enforce a specific provision in the MDA; rather, she was required to defend against Husband's attempt to have the entire MDA set aside. This is clearly an effort to "enforce" the agreement as a whole. Therefore, the MDA mandates an award of attorney fees to Wife.

In reviewing the amount of the award, we find that the attorney fee awarded by the trial court was well within the trial court's discretion. Therefore, we affirm the trial court's award of attorney fees to Wife.

### *Attorney Fees on Appeal*

Wife argues that she is entitled to her attorney fees incurred on appeal, contending that Husband's appeal is frivolous under Tennessee Code Annotated § 27-1-122. However, regardless of whether Husband's appeal is frivolous, Wife is entitled to her attorney fees for

this appeal pursuant to the parties' MDA.  Therefore, we remand the case to the trial court to determine a reasonable attorney fee to Wife for this appeal.

## CONCLUSION

The decision of the trial court is affirmed and the cause is remanded for further proceedings consistent with this Opinion.  Costs on appeal are to be taxed to Appellant Stephen George Beem and his surety, for which execution may issue, if necessary.


_____

HOLLY M. KIRBY, JUDGE