

FILED

02/27/2017

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 2, 2017

## STACEY J. CORDELL v. CLEVELAND TENNESSEE HOSPITAL, LLC, ET AL.

**Appeal from the Circuit Court for Williamson County**
**No. 2016-38  Michael Binkley, Judge**

_____

### No. M2016-01466-COA-R3-CV

_____

The trial court, pursuant to a motion to dismiss filed by defendants, dismissed the plaintiff's lawsuit because she did not comply with certain aspects of the Tennessee Healthcare Liability Act incident to the filing of her original complaint.  Because we do not construe the allegations in the original complaint as presenting any health care liability claims, we reverse the trial court's dismissal of this lawsuit and remand for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and. JOHN W. MCCLARTY, J., joined.

C. Chad Young and Christopher M. Harris, Ringgold, Tennessee, for the appellant, Stacey J. Cordell.

C. J. Gideon, Jr. and Christopher A. Vrettos, Nashville, Tennessee, for the appellees, Cleveland Tennessee Hospital, LLC, and Tyler Cole Parsons.

### OPINION

### Background and Procedural History

This lawsuit was commenced on January 25, 2016 when Plaintiff Stacey Cordell ("Ms. Cordell") filed a complaint for damages in the Williamson County Circuit Court.

The complaint was predicated upon alleged misconduct that occurred the previous January while Ms. Cordell was a patient at SkyRidge Medical Center. According to the complaint,[1] Ms. Cordell had been transported to the hospital by police who were concerned that she had taken too high of a dosage of prescribed medication. Upon her arrival at the hospital, she was checked into the emergency room and examined by hospital staff. Following this initial examination, Ms. Cordell was placed in a hospital room.

When Ms. Cordell's husband later arrived at the hospital to see his wife, he was reportedly forced to leave the premises. However, because Ms. Cordell had been allowed to keep a cell phone in her room, she was able to maintain some contact with her husband. At one point, she called her husband to inform him that a security guard stationed outside her room was making her uncomfortable. She claimed that the guard "kept opening her door and coming into her room in order to stare at her." In light of these concerns, Ms. Cordell's husband called the nurse's desk to see whether his wife could get a new security guard assigned to her.

According to the complaint, the subject security guard, Defendant Tyler Parsons ("Mr. Parsons"), subsequently confiscated Ms. Cordell's cell phone. When Ms. Cordell inquired as to why he had done this, Mr. Parsons allegedly responded that she was causing him problems. Although Ms. Cordell was soon relocated to another room, she has no recollection of any events that took place in the twelve-plus hours following her relocation. When she awoke the next evening, she was told that she was being transferred to another hospital for further evaluation. While she was a patient at this second hospital, Ms. Cordell noticed blood and soreness when she used the restroom. She was eventually discharged and returned to her husband's care.

According to the complaint, Ms. Cordell took a shower immediately upon her return home. While in the shower, she felt a burning pain and cried out loud. Her husband subsequently came to her aid and observed that she had several injuries on her vaginal and anal areas. When Ms. Cordell went to her obstetrician the following day, evidence of rape, including semen, was discovered. Ms. Cordell then went to the Rape Crisis Center, where she was informed that she may have been raped by multiple persons. Because Ms. Cordell had not recently had sexual relations with her husband, she came to the conclusion that she had been raped by Mr. Parsons while at the SkyRidge Medical Center. As a result, she filed a complaint asserting claims against Mr. Parsons and Cleveland Tennessee Hospital Company, LLC ("SkyRidge"), for assault and battery, gross negligence, and intentional infliction of emotional distress.

---

[1] For purposes of this appeal, we presume that the complaint's factual allegations are true.

On March 2, 2016, Mr. Parsons and SkyRidge filed a joint motion to dismiss wherein they contended that Ms. Cordell's complaint should be dismissed for failure to state a claim upon which relief can be granted. The motion was supported by a memorandum of law, as well as a statement of undisputed material facts.[2] In moving for the dismissal of Ms. Cordell's lawsuit, Mr. Parsons and SkyRidge argued that although her claims fell within the ambit of the Tennessee Health Care Liability Act, she had failed to comply with the certificate of good faith requirement in Tennessee Code Annotated section 29-26-122 and the pre-suit notice requirement found in Tennessee Code Annotated section 29-26-121.[3] On April 29, 2016, Ms. Cordell filed a response to the motion to dismiss and argued that the Tennessee Health Care Liability Act did not apply to her claims.

On May 4, 2016, prior to a hearing on the motion to dismiss, Ms. Cordell filed an amended complaint. The amended complaint reasserted the claims in Ms. Cordell's original complaint but also asserted a claim for negligence pursuant to the Tennessee Health Care Liability Act. Among other things, Ms. Cordell alleged that SkyRidge had failed to provide appropriate supervision and nurse monitoring.

On June 16, 2016, the trial court entered an order on the motion to dismiss. Therein, the trial court concluded that Ms. Cordell's amended complaint could not be considered. In reaching this conclusion, the trial court, in finding that a "responsive pleading" had been filed, presumably determined that the motion to dismiss filed by Mr. Parsons and SkyRidge constituted a responsive pleading. As a result, because Ms. Cordell had not filed a motion for leave to amend her complaint and opposing counsel had not agreed to any amendment, the trial court found that Rule 15 of the Tennessee Rules of Civil Procedure barred the amended complaint.

In reviewing Ms. Cordell's original complaint, the trial court determined that it presented claims that were subject to the provisions of the Tennessee Health Care Liability Act. However, because Ms. Cordell had failed to attach a certificate of good faith to the complaint in accordance with Tennessee Code Annotated section 29-26-122, the trial court concluded that the lawsuit should be dismissed with prejudice. The trial

---

[2] Because they desired to rely on certain materials outside the pleadings in support of their motion to dismiss, Mr. Parsons and SkyRidge argued that their motion should be treated procedurally as one brought under Rule 56 of the Tennessee Rules of Civil Procedure.

[3] Because Ms. Cordell had failed to provide a certificate of good faith with her complaint, Mr. Parsons and SkyRidge argued that the entire complaint should be dismissed with prejudice. Alternatively, they argued that the complaint should be dismissed as to Mr. Parsons without prejudice. In the course of making this alternative argument, Mr. Parsons and SkyRidge acknowledged that Ms. Cordell had sent a pre-suit notice letter to SkyRidge.

court also found that Ms. Cordell had failed to give Mr. Parsons pre-suit notice under Tennessee Code Annotated section 29-26-121. This timely appeal then followed.[4]

## Discussion

At issue in this appeal is the propriety of the trial court's June 16, 2016 order of dismissal. Ms. Cordell argues that her lawsuit should not have been dismissed and contends that the trial court erred in refusing to consider her amended complaint. On the other hand, Mr. Parsons and SkyRidge ("Appellees") argue that the trial court did not err in declining to consider the amended complaint. Moreover, they contend that the original complaint was properly dismissed on account of Ms. Cordell's failure to satisfy the requirements of the Tennessee Health Care Liability Act.

The purpose of a motion to dismiss is to determine whether the pleadings state a claim upon which relief can be granted. *Cullum v. McCool*, 432 S.W.3d 829, 832 (Tenn. 2013) (citation omitted). The motion "tests the legal sufficiency of the plaintiff's complaint and not the strength of the plaintiff's evidence." *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999) (citation omitted). When a court rules on such a motion, it "must construe the complaint in favor of the plaintiff, accept the allegations of fact as true, and deny the motion unless it appears that the plaintiff can establish no facts supporting the claim that would warrant relief." *Id.* (citation omitted). On appeal, we review a trial court's adjudication of a motion to dismiss de novo, with no presumption of correctness. *Cartwright v. DMC-Memphis, Inc.*, 468 S.W.3d 517, 522 (Tenn. Ct. App. 2014) (citation omitted). When a trial court considers matters outside of the pleadings, a motion to dismiss is converted to a motion for summary judgment. *Moore v. State*, 436 S.W.3d 775, 783 (Tenn. Ct. App. 2014) (citation omitted). Summary judgment rulings are also reviewed de novo with no presumption of correctness. *Id.* (citation omitted).

When the Appellees moved to dismiss Ms. Cordell's lawsuit, they contended that her claims were subject to the Tennessee Health Care Liability Act. In doing so, the Appellees challenged Ms. Cordell's compliance with two statutory provisions. First and foremost, they contended that Ms. Cordell had failed to satisfy the requirements of

---

[4] Following the filing of the notice of appeal, the trial court entered an order stating that SkyRidge and Mr. Parsons were entitled to a judgment under Tennessee Code Annotated section 20-12-119(c), which provides for an award of attorney's fees and costs upon the grant of a Rule 12.02(6) motion to dismiss. It is not apparent from the record, however, that the trial court actually made a specific award of costs. By statute, "[a]n award of costs pursuant to [Tenn. Code Ann. § 20-12-119(c)] shall be made only after all appeals of the issue of the granting of the motion to dismiss have been exhausted and if the final outcome is the granting of the motion to dismiss." Tenn. Code Ann. § 20-12-119(c)(3). Given our disposition herein, there is no current basis upon which to make an award of attorney's fees and costs pursuant to Tennessee Code Annotated section 20-12-119(c).

Tennessee Code Annotated section 29-26-122. Under that statute, "[i]n any health care liability action in which expert testimony is required . . . the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint." Tenn. Code Ann. § 29-26-122(a). The Appellees also contended that Ms. Cordell had failed to give Mr. Parsons pre-suit notice in accordance with Tennessee Code Annotated section 29-26-121. That statute specifically provides that "[a]ny person . . . asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state." Tenn. Code Ann. § 29-26-121(a)(1). Given their belief that the claims in Ms. Cordell's complaint were subject to the Tennessee Health Care Liability Act, the Appellees' filing of a motion to dismiss was proper. As the Tennessee Supreme Court has noted:

> The proper way for a defendant to challenge a complaint's compliance with Tennessee Code Annotated section 29–26–121 and Tennessee Code Annotated section 29–26–122 is to file a Tennessee Rule of Procedure 12.02 motion to dismiss. In the motion, the defendant should state how the plaintiff has failed to comply with the statutory requirements by referencing specific omissions in the complaint and/or by submitting affidavits or other proof. Once the defendant makes a properly supported motion under this rule, the burden shifts to the plaintiff to show either that it complied with the statutes or that it had extraordinary cause for failing to do so. Based on the complaint and any other relevant evidence submitted by the parties, the trial court must determine whether the plaintiff has complied with the statutes. If the trial court determines that the plaintiff has not complied with the statutes, then the trial court may consider whether the plaintiff has demonstrated extraordinary cause for its noncompliance.

*Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012).

When the trial court entered its order on the motion to dismiss, it stated that Ms. Cordell's amended complaint was supported by a certificate of good faith. It ultimately refused to consider the amended complaint, however, as it noted that no leave had been given to file an amended complaint. In reaching this decision, the trial court treated the Appellees' motion to dismiss as a responsive pleading. Under Rule 15 of the Tennessee Rules of Civil Procedure, although a party may amend its pleading "once as a matter of course at any time before a responsive pleading is served," it otherwise must obtain "written consent of the adverse party or . . . leave of court." Tenn. R. Civ. P. 15.01. As an initial matter, however, we note that the trial court erred in deeming the motion to dismiss to be a responsive pleading. Indeed, "[i]t is well-settled in Tennessee that a

- 5 -

motion to dismiss is not a responsive pleading." *Mosley v. State*, 475 S.W.3d 767, 774 (Tenn. Ct. App. 2015) (citations omitted).

Although the Appellees appear to acknowledge that the trial court erred in its reasoning as to why the amended complaint could not be considered, they maintain that the correct result was reached and that consideration of the amended complaint is unjustified. Namely, they contend that the absence of a certificate of good faith incident to the first complaint is not something that can be cured by an amendment. In support of this position, they cite to the text of Tennessee Code Annotated section 29-26-122 and a number of federal and state decisions interpreting the Tennessee Health Care Liability Act. Because we are of the opinion that there was nothing to cure with respect to Ms. Cordell's original complaint as it concerned her compliance with the Tennessee Health Care Liability Act, we will refrain from delving into the specific cases cited by the Appellees. Indeed, we conclude that their starting standpoint for analyzing the issue is misplaced. The error in their argument is that it presupposes that the claims in the original complaint are subject to the requirements of the Tennessee Health Care Liability Act. Although we would not dispute that the *amended* complaint implicates a "health care liability action" as that term is defined in Tennessee Code Annotated section 29-26-101(a)(1), we find nothing in the original complaint that suggests that it should have been subject to the requirements of the Tennessee Health Care Liability Act.

A claim is subject to the Tennessee Health Care Liability Act if it qualifies as a "health care liability action" pursuant to the statutory definition in Tennessee Code Annotated section 29-26-101(a)(1). *Osunde v. Delta Med. Ctr.*, No. W2015-01005-COA-R9-CV, -- S.W.3d ---, 2016 WL 537075, at *7 (Tenn. Ct. App. Feb. 10, 2016) (citation omitted). Under that section, a health care liability action is

> any civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based[.]

Tenn. Code Ann. § 29-26-101(a)(1). This statutory definition is conclusive, and it casts a wide net over civil claims that arise within a medical setting. In fact, this Court has previously remarked that "it should not be surprising if most claims now arising within a medical setting constitute health care liability actions." *Osunde*, 2016 WL 537075, at *7. We hasten to add, however, that "whether a health care liability action is implicated is entirely dependent on whether the factual allegations meet the definition outlined in the statute." *Id.* at n.6.

- 6 -

Based on our review of Ms. Cordell's original complaint, we see no facts alleging that a health care provider caused an injury related to the provision of, or failure to provide, health care services. In seeking relief against the Appellees, Ms. Cordell's original complaint asserted three separate causes of action.[5] In order to give better context to our analysis, we reproduce the relevant portions of the complaint below:

## COUNT ONE: ASSAULT AND BATTERY

-30-

Plaintiff realleges and reincorporates Paragraphs 1 through 29 as if the same were repeated verbatim herein Paragraphs 1-29.

-31-

Without the consent of Plaintiff Stacey Cordell and in the scope of their employment, Defendant Parsons and/or employees, agents, and/or contractors of Defendant SkyRidge assaulted and sexually assaulted Plaintiff in an intentional, wanton, willful, reckless, and/or negligent manner.

-32-

Plaintiff Stacey Cordell was not conscious and/or was under the influence of medications and unaware of her surroundings, and did not have the ability to give consent to any sexual encounter.

-33-

Despite Plaintiff Stacey Cordell being unconscious and/or under the influence of medications and unaware of her surroundings, Defendant Parsons and/or employees, agents,

---

[5] Although there were only three causes of action asserted, the third count was mislabeled "Count Four."

and/or contractors of Defendant SkyRidge in the scope of their employment physically battered and/or sexually battered Plaintiff Stacey Cordell vaginally and anally.

-34-

Plaintiff Stacey Cordell states that Defendant Parsons and/or employees, agents, and/or contractors of Defendant SkyRidge in the scope of their employment acted negligently, intentionally, recklessly and/or wantonly in assaulting, sexually assaulting, battering and/or sexually battering Plaintiff Stacey Cordell.

-35-

As a direct and proximate result of the actions of Defendant Parsons and/or employees, agents, and/or contractors of Defendant SkyRidge in the scope of their employment, Plaintiff Stacey Cordell suffered extreme pain and suffering, mental anguish, loss of enjoyment of life, and loss of future wages and earning capacity.

## COUNT TWO: GROSS NEGLIGENCE

-36-

Plaintiff realleges and reincorporates Paragraphs 1 through 35 as if the same were repeated verbatim herein.

-37-

Without the consent of Plaintiff Stacey Cordell and in the scope of their employment, Defendant Parsons and/or employees, agents, and/or contractors of Defendant SkyRidge assaulted, sexually assaulted, battered, and/or sexually battered Plaintiff Stacey Cordell while she was unconscious and/or was under the influence of medications and unaware of her surroundings.

These actions by Defendant Parsons and/or employees, agents, and/or contractors of Defendant SkyRidge while in the scope of their employment, were grossly negligent, intentional, reckless, malicious, wanton, and/or willful, and were with indifference to and in blatant disregard of the safety of Plaintiff Stacey Cordell.

-39-

As a direct and proximate result of the actions of Defendant Parsons and/or employees, agents, and/or contractors of Defendant SkyRidge, Plaintiff Stacey Cordell suffered extreme pain and suffering, mental anguish, loss of enjoyment of life, and loss of future wages and earning capacity.

## COUNT FOUR: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

-40-

Plaintiff realleges and reincorporates Paragraphs 1 through 39 as if the same were repeated verbatim herein.

-41-

As a result of the actions of Defendant Parsons and/or the contractors, employees, agents, and/or staff of Defendant SkyRidge, Plaintiff has been haunted by this event and has suffered mental distress due to the stressors of her injuries and disabilities caused by the aforementioned Defendants.

-42-

Such actions by the Defendant(s) were extreme and outrageous in our civilized society and such actions purposefully disturbed the Plaintiff's mental and emotional state.

> As a direct and proximate result of the actions of Defendant Parsons and/or the
> contractors, employees, agents, and/or staff of Defendant SkyRidge, Plaintiff Stacey Cordell
> suffered extreme pain and suffering, mental anguish, loss of enjoyment of life, and loss of future
> wages and earning capacity.

As is clear from our reading of the complaint, each of these legal theories is based on the same factual predicate. Each count alleges that an injury has occurred due to the purported rape perpetrated by Mr. Parsons and potential other unnamed individuals working for SkyRidge. This is true even with respect to the denominated gross negligence claim, which simply characterizes Mr. Parsons' sexual assault and battery in legal terms as "grossly negligent, intentional, reckless, malicious, wanton, and/or willful." Negligence is not charged against SkyRidge for failing to protect or monitor Ms. Cordell. As far as the original complaint will admit, the liability of SkyRidge appears to be predicated entirely on the doctrine of respondeat superior. Indeed, the complained-of actions relate to Mr. Parsons "and/or [other] employees . . . while in the scope of their employment."

Here, the threshold question is whether the alleged rape perpetrated by Mr. Parsons is *related to* the provision of, or failure to provide, health care services. In construing any statute, we start with the language chosen by the General Assembly and must give the words their natural and ordinary meaning. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010) (citations omitted). When the text is clear and unambiguous, we need not look beyond the statute to ascertain its meaning. *Id.* at 527 (citations omitted). No doubt, "related to" and other similar phrases carry a broad meaning. *See, e.g.*, *Friedman v. Hannan*, 987 A.2d 60, 66 (Md. 2010) (concluding that "relating to" is a broad term). With that said, that meaning should not itself be twisted beyond its ordinary and common understanding. Something is related to something if it is "connected." *Black's Law Dictionary* 1288 (6th ed. 1990). Indeed, to relate to something is "to bring into association with or connection with." *Black's Law Dictionary* 1288 (6th ed. 1990). With this in mind, does Ms. Cordell's original complaint allege that Mr. Parsons has caused an injury related to the provision of, or failure to provide, health care services? We are of the opinion that such an allegation is absent. Under the statute, health care services "includes care by health care providers" and "also includes staffing, custodial or basic care, positioning, hydration and similar patient services." Tenn. Code Ann. § 29-26-101(b). In our view, it strains credulity to view the willful and malicious actions such as those alleged here as being related to the provision of, or failure to

provide, health care services.[6]   Again, the offending conduct complained of relates solely to the actions of Mr. Parsons and others who may have engaged in the alleged rape of Ms. Cordell.[7]  We fail to see how the alleged rape of a patient is logically connected with the provision of health care services.  In particular, we fail to see how the mere presence of Ms. Cordell in a hospital room severs the logical gap that exists between a rape of a patient and the provision of health care services.  The two concepts are simply not related.  In our view, were we to say otherwise, this would essentially mean that any actions or deeds by a health care provider, if committed within the confines of a medical facility, give rise to a health care liability action.  We have already acknowledged that the breadth of the definition in Tennessee Code Annotated section 29-26-101(a)(1) means that perhaps most claims that arise in the medical setting will now give rise to health care liability actions.  Our acknowledgment of this, however, does not mean that all claims in the medical setting give rise to health care liability actions.  Whether a case is subject to the strictures of the Tennessee Health Care Liability Act will invariably depend on the facts of each case and the allegations pled in the complaint.

Just as we do not view the alleged rape of Ms. Cordell as being related to the provision of health care services, we do not view it as being related to the failure to provide health care services.  With respect to this point, we must again stress the limited nature of the allegations in the original complaint.  The only actions actually complained of are those of Mr. Parsons and other unnamed individuals working for SkyRidge.  As we have noted in a previous footnote, had the original complaint brought a negligence claim against SkyRidge directly and asserted that it was liable due to its failure to provide appropriate care, supervision, or monitoring, the complaint would have alleged that a "health care provider . . . caused an injury related to the . . . failure to provide . . . health care services."  Tenn. Code Ann. § 29-26-101(a)(1).  Yet, this is not the claim that was

---

[6] In *Lacy v. Mitchell*, No. M2016-00677-COA-R3-CV, 2016 WL 6996366, at *3 (Tenn. Ct. App. Nov. 30, 2016), *perm. app. filed*,  we rejected the argument that a complaint was not governed by the Tennessee Health Care Liability Act simply because the claims were rooted in intentional tort rather than medical negligence.  We concluded that such an argument was without merit "in light of the THCLA's directive that any civil action otherwise meeting its definition of a health care liability action is subject to its terms 'regardless of the theory of liability on which the action is based.'"  *Id.* (quoting Tenn. Code Ann. § 29-26-101(a)(1)).  This is the proper approach analytically inasmuch as the definition of a health care liability action is not dictated by the labeling of claims but is instead based entirely on the definition contained at Tennessee Code Annotated section 29-26-101(a)(1).  Of course, we fail to see how intentional actions such as those alleged in Ms. Cordell's original complaint can be considered to be related to the provision of, or failure to provide, health care services.

[7] We would not dispute that if Ms. Cordell had asserted negligence against SkyRidge for failing to provide adequate patient monitoring and supervision, the resulting injury would be properly framed as arising from the failure to provide health care services.  This, however, was not pled in the original complaint and is therefore not before us.

- 11 -

pled. Ms. Cordell did not allege that SkyRidge's failure to provide appropriate care or monitoring contributed to her alleged rape. Again, the only actors who are stated to have caused the injury are Mr. Parsons and other unnamed employees. We do not view their alleged assault and rape of Ms. Cordell as being related to their failure to provide health care services, nor are we of the opinion that the original complaint makes any such connection.

In this vein, although we would not dispute that Mr. Parsons' duties in watching over Ms. Cordell's hospital room involved health care services as that term is defined by statute, *see* Tenn. Code Ann. § 29-26-101(b) (stating that health care services include "staffing, custodial or basic care"), we do not see anything in the original complaint alleging that Mr. Parsons' failure to provide proper security or monitoring resulted in an injury to Ms. Cordell. Failure implies a "lapse" or "ineffectualness." *Black's Law Dictionary* 594 (6th ed. 1990). Here, Ms. Cordell is not asserting that Mr. Parsons' deficiencies or failures as a hospital security guard resulted in some injury to her. Indeed, the assault that Ms. Cordell claims to have endured is not connected to Mr. Parsons' failure to provide proper supervision. Moreover, her injury is not predicated in any way on Mr. Parsons' failure to do something related to health care. Rather, her allegation is that Mr. Parsons injured her by raping her. For the foregoing reasons, we conclude that the original complaint does not assert that a health care provider caused an injury related to the provision of, or failure to provide, health care services. Accordingly, we hold that the trial court erred in dismissing the original complaint for noncompliance with the requirements of the Tennessee Health Care Liability Act.

Although not directly on point, we refer to our recent decision in *Lacy v. Mitchell*, No. M2016-00677-COA-R3-CV, 2016 WL 6996366 (Tenn. Ct. App. Nov. 30, 2016), *perm. app. filed*. Among other things, the plaintiff in *Lacy* alleged that her chiropractor had beaten her on her back with a medical folder when she was leaving an appointment. *Id.* at *4. On appeal, we concluded that this claim, as pled, did not satisfy the definition of a "health care liability action." *Id.*[8] Just as the act of hitting a plaintiff on the back with a medical folder does not involve an injury related to the provision of, or failure to

---

[8] Also at issue in *Lacy* was whether all claims in a complaint must effectively be subject to the Tennessee Health Care Liability Act if one claim is. The defendants in that case argued that even if a certain claim was not governed by the Tennessee Health Care Liability Act, it was subject to dismissal if another claim governed by the Act was subject to dismissal for noncompliance with the Act's procedural requirements. We rejected this argument, noting as follows: "Such a[n] . . . interpretation of the statute would defy logic by allowing for the dismissal of non-health care liability claims based on noncompliance with procedural requirements that do not apply to them." *Lacy*, 2016 WL 6996366, at *4. We have previously noted that "Tennessee Code Annotated § 29-26-101(c) contemplates that a complaint may assert other claims that are not subject to the pre-suit notice provision[.]" *Igou v. Vanderbilt Univ.*, No. M2013-02837-COA-R3-CV, 2015 WL 1517794, at *5 (Tenn. Ct. App. Mar. 27, 2015).

- 12 -

provide, health care services, we fail to see how a defendant's alleged rape of a patient is related to the provision of, or failure to provide, health care services.

Because the original complaint was not subject to the requirements of the Tennessee Health Care Liability Act, there is no credence to the suggestion that allowing Ms. Cordell's amended complaint violates the general requirement[9] that a certificate of good faith under Tennessee Code Annotated section 29-26-122 be filed contemporaneously with a health care liability complaint. As the original complaint did not advance a health care liability action, there was no need to cure the absence of a certificate of good faith. Moreover, as no responsive pleading had been filed by the Appellees, Ms. Cordell was free to file her amended complaint. *See* Tenn. R. Civ. P. 15.01 ("A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served[.]"). The amended complaint was properly before the trial court, and it should be considered by the trial court on remand.

Although Ms. Cordell's original complaint did not assert any health care liability claims, the amended complaint clearly does. Indeed, although the amended complaint incorporates and reasserts the three legal theories from the original complaint, it also expressly sets forth a count labeled "NEGLIGENCE PURSUANT TO THE TENNESSEE HEALTH CARE LIABILITY ACT, TENN. CODE ANN. § 29-26-101, ET SEQ." Among other things, this count alleges that because of SkyRidge's negligence, Ms. Cordell failed to receive a safe environment, proper treatment, and necessary supervision.

To the extent that the Appellees seek to challenge Ms. Cordell's compliance with the applicable requirements of the Tennessee Health Care Liability Act, they are certainly free to pursue such a challenge with respect to the amended complaint on remand. However, the Appellees did not move for the dismissal of any claims in the amended complaint in the trial court. Instead, they pursued dismissal of the original complaint on the mistaken theory that the claims therein were subject to the Tennessee Health Care Liability Act. The only argument the Appellees made vis-à-vis the amended complaint was that it was inapt for consideration. On remand, the Appellees are free to raise any issues that they believe exist with respect to the sufficiency of Ms. Cordell's amended complaint. However, any such potential issues are outside of our purview on this appeal.

---

[9] Tennessee Code Annotated section 29-26-122 does allow courts to grant an extension of time within which to file a certificate of good faith under specified circumstances. *See* Tenn. Code Ann. § 29-26-122(c) ("The court may, upon motion, grant an extension within which to file a certificate of good faith if the court determines that a health care provider who has medical records relevant to the issues in the case has failed to timely produce medical records upon timely request, or for other good cause shown.").

## Conclusion

The trial court's dismissal of Ms. Cordell's lawsuit is hereby reversed. Ms. Cordell's amended complaint is properly before the trial court, and this case is remanded for such further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are assessed against the Appellees Cleveland Tennessee Hospital, LLC, and Tyler Parsons, jointly and severally, for all of which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE