IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 1, 2026

## ANGELA CLARK v. DR. ROSEANN MAIKIS ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 24C2423  Amanda Jane McClendon, Judge**
_____

## No. M2025-01540-COA-R3-CV
_____

A plaintiff sued a physician and the physician's practice, alleging the physician performed a biopsy during a medical office visit without the plaintiff's consent. The trial court dismissed the plaintiff's claim for failure to comply with the pre-suit notice requirement in the Health Care Liability Act. Because the court also determined that the action was time-barred, it dismissed the complaint with prejudice. We conclude that the plaintiff's claim relates to the provision of, or failure to provide, health care services. So we affirm the dismissal of the complaint for failure to comply with the Health Care Liability Act. But because we conclude that the complaint does not clearly show that it was filed more than one year after the plaintiff discovered the injury, we modify the dismissal to a dismissal without prejudice.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II and VALERIE L. SMITH, JJ., joined.

Angela D. Clark, Joelton, Tennessee, pro se appellant.

Dixie W. Cooper and Matthew H. Cline, Brentwood, Tennessee, for the appellees, Dr. Roseann Maikis and Advanced Women's Health of Nashville.

## OPINION

## I.

On October 4, 2024, Angela Clark, acting pro se, filed suit against Dr. Roseann Maikis and Advanced Women's Health of Nashville alleging that Dr. Maikis performed an unauthorized endometrial biopsy on Ms. Clark at an office visit on July 25, 2023. According to the complaint, Ms. Clark "did not know that the doctor would perform a biopsy procedure during this visit" and did not authorize the procedure. She sought compensatory damages for "pain and suffering, bodily harm and injury, emotional distress, return of some medical expenses, future medical costs due to possible internal damages as well as potential harm from radiation exposure from scans as a result of th[e] unauthorized biopsy."

According to the complaint, Ms. Clark consulted the physician about irregularities in her menstrual cycle. After questioning Ms. Clark, Dr. Maikis performed a physical examination and a transvaginal ultrasound. While Ms. Clark was still lying on the examination table, the physician stated that she was "going to check . . . for cancer." When Ms. Clark asked what she meant, Dr. Maikis explained that she was "going to get a sample . . . or a biopsy of [the] uterus." After hearing that she "might feel a little pinch," Ms. Clark "froze." Dr. Maikis proceeded with the biopsy, during which Ms. Clark experienced "excruciating pain."

Ms. Clark, the complaint continued, "knew that what happened . . . during this office visit with the defendant was not right." She "felt violated." But she did not know "that what occurred . . . was a medical violation" until much later. In June 2024, she obtained copies of her medical records from Dr. Maikis and her records from other medical providers that she had seen for a second opinion. She saw "notations of 'consent obtained: verbal and written'" and "[r]isks discussed: bleeding, infection, discomfort" in her medical records from the other providers. She then realized that Dr. Maikis should have obtained her consent to perform the biopsy.

During her medical records review, Ms. Clark also allegedly discovered that Dr. Maikis "did not use a medically appropriate 'pipelle' device" during the biopsy. Instead, she used a "curette," a sharp-edged cutting tool normally used in a hospital setting accompanied by anesthesia. Yet Ms. Clark "was not afforded any anesthesia and numbing agent." The complaint stated that Ms. Clark never would have "had this procedure done without some form of pain medication" or information about the "risks of the procedure and other details" that she was not given.

Arguing that Ms. Clark's claim met the definition of a "health care liability action" in the Tennessee Health Care Liability Act, Dr. Maikis and Advanced Women's Health moved to dismiss the complaint based on the expiration of the applicable statute of limitations and Ms. Clark's failure to comply with the procedural requirements of the Act. *See* Tenn. Code Ann. §§ 29-26-101 to -122 (2024). Ms. Clark conceded that she did not comply with the Health Care Liability Act. But she insisted that the Act did not apply to a pure medical battery claim. Relying on the discovery rule, she argued that her complaint

2

was timely because she did not discover the wrongful conduct "until she requested her medical records on June 18, 2024." *See id.* § 29-26-116(a)(2).

The trial court ruled that the Health Care Liability Act applied to Ms. Clark's claim. Because she failed to provide written pre-suit notice within the timeframe required by the Act or within the one-year statute of limitations, the court concluded that her claim was time-barred. So it dismissed her complaint with prejudice.

Complaining that the court failed to expressly address her discovery rule argument, Ms. Clark filed a motion to alter or amend the decision. The trial court declined to alter its ruling.

**II.**

A.

A motion to dismiss for failure to state a claim upon which relief can be granted challenges the legal sufficiency of the allegations in the complaint, not the strength of the evidence. *Ellithorpe v. Weismark*, 479 S.W.3d 818, 824 (Tenn. 2015). In resolving the motion, the court "must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (quoting *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31-32 (Tenn. 2007)). We review the trial court's decision to grant or deny a motion to dismiss de novo with no presumption of correctness. *Ellithorpe*, 479 S.W.3d at 824.

The trial court dismissed Ms. Clark's claims based on her noncompliance with the pre-suit notice requirement in the Health Care Liability Act. *See* Tenn. Code Ann. § 29-26-121(a)(1) (requiring any person with a potential health care liability claim to provide pre-suit notice of the claim to all health care providers who could be named as defendants). Ms. Clark insists that the Act does not apply to her medical battery claim.

When a medical professional performs an unauthorized procedure, the patient has a claim for medical battery. *Blanchard v. Kellum*, 975 S.W.2d 522, 524 (Tenn. 1998). The determinative issues in a medical battery action are whether the patient knew the provider was going to perform the procedure and, if so, whether the patient authorized it. *Id.* No expert testimony is necessary to resolve these issues. *Id.* Absent an emergency, a physician who performs an unauthorized procedure on a patient "is liable to such person for consequent injuries, regardless of whether such injuries resulted from negligence." *Ray v. Scheibert*, 484 S.W.2d 63, 71 (Tenn. Ct. App. 1972). Typical examples of pure medical battery claims are "when: (1) a professional performs a procedure that the patient was unaware the doctor was going to perform; or (2) the procedure was performed on a part of

3

the body other than that part explained to the patient (i.e., amputation of the wrong leg)." *Ashe v. Radiation Oncology Assocs.*, 9 S.W.3d 119, 121 (Tenn. 1999).

The Tennessee Medical Malpractice Act, the precursor to our current Health Care Liability Act, did not apply to medical battery claims. *Cooper v. Mandy*, 639 S.W.3d 29, 35 (Tenn. 2022); *Cardwell v. Bechtol*, 724 S.W.2d 739, 751 (Tenn. 1987). The Medical Malpractice Act, as construed by our supreme court, only applied to claims alleging "negligent conduct which constitutes or bears a substantial relationship to the rendition of medical treatment by a medical professional." *Est. of French v. Stratford House*, 333 S.W.3d 546, 555 (Tenn. 2011). Battery claims are not based on negligence. *Blanchard*, 975 S.W.2d at 524; *Cardwell*, 724 S.W.2d at 751 (noting that battery and malpractice are distinct theories of liability).

In 2011, our legislature substantially revised the Medical Malpractice Act. *Ellithorpe*, 479 S.W.3d at 826. The new legislation "remov[ed] all references to "medical malpractice" . . . and replac[ed] them with 'health care liability.'" *Id.* The changes were not just semantic. The amendment added statutory definitions for both "health care provider" and "health care liability action." *See* Tenn. Code Ann. § 29-26-101(a). It also specified that the Act applied to any claim that satisfied these definitions "regardless of any other claims, causes of action, or theories of liability alleged in the complaint." *Ellithorpe*, 479 S.W.3d at 826 (quoting Tenn. Code Ann. § 29-26-101(c)). These changes evidenced "a clear legislative intent" to broaden the Act's reach. *Id.* at 827.

The current version of the Health Care Liability Act "casts a wide net." *Cordell v. Cleveland Tenn. Hosp., LLC*, 544 S.W.3d 331, 336 (Tenn. Ct. App. 2017). It broadly defines a "health care liability action" as "any civil action . . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based." Tenn. Code Ann. § 29-26-101(a)(1). "[A]ll civil actions" that meet this definition must comply with the procedural requirements of the Act no matter what theory of liability is alleged in the complaint. *Ellithorpe*, 479 S.W.3d at 827. This means that "most claims arising in a medical setting will be health care liability claims." *Cooper*, 639 S.W.3d at 35 (citing *Osunde v. Delta Med. Ctr.*, 505 S.W.3d 875, 884-85 (Tenn. Ct. App. 2016)).

As our supreme court has recognized, the legal landscape has changed. Under prior law, "a medical battery claim may have been considered an ordinary tort claim and not subject to the Medical Malpractice Act." *Id.* (footnote omitted). But the basis for the previous distinction disappeared when the legislature adopted the expansive definition of "health care liability action." *Id.* Based on the plain language in the current Act, "[p]laintiffs cannot avoid the scope of the Act by alleging a health care provider committed medical battery . . . when the claim relates to the health care service provided." *Id.*

4

B.

Neither party disputes that Dr. Maikis is a "health care provider" or that this is a "civil action." The sole issue is whether the allegations in Ms. Clark's complaint, and any reasonable inferences therefrom, describe injuries that "relate[ ] to the provision of, or failure to provide, health care services." Tenn. Code Ann. § 29-26-101(a)(1). As the supreme court has made abundantly clear, Ms. Clark "cannot avoid the scope of the Act by alleging [Dr. Maikis] committed medical battery . . . [if] the claim relates to the health care service provided." *Cooper*, 639 S.W.3d at 35.

Ms. Clark argues that her injuries arise solely from lack of consent, not negligent medical care. Yet the injuries described in her complaint clearly relate to her physician's provision of, or failure to provide, health care services. "Health care services," specifically "includes care by physicians." Tenn. Code Ann. § 29-26-101(b). Ms. Clark came to the physician for health care services. Based on her symptoms, Dr. Maikis proposed a biopsy to "check for cancer." Without question, a biopsy is a health care service. Even the allegations about lack of consent and failure to engage in an informed consent discussion relate to the provision of health care services. The informed consent discussion plays an integral role in the provision of health care services. *See Cooper*, 639 S.W.3d at 35-36. Any allegations about the quality of the physician's care, such as the medical device used or the availability of anesthesia, also relate to the provision of, or failure to provide, health care services.

C.

Because Ms. Clark has alleged injuries related to the provision of health care services, the Act applies to her claim despite her theory of liability.[1] Tenn. Code Ann. § 29-26-101(a)(1), (c). Ms. Clark concedes that she did not provide the defendants with any prior notice of her claim. *Id.* § 29-26-121(a)(1). Compliance with the Act's pre-suit notice requirement is mandatory in a health care liability action. *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 310 (Tenn. 2012). The proper sanction for failure to provide the required notice is dismissal without prejudice. *Foster v. Chiles*, 467 S.W.3d 911, 916 (Tenn. 2015). Yet here the court dismissed the complaint with prejudice based on the expiration of the statute of limitations. *See* Tenn. Code Ann. § 29-26-116(a).

---

[1] "[W]hether a health care liability action is implicated is entirely dependent" on whether the complaint's factual allegations satisfy the statutory definition. *Osunde*, 505 S.W.3d at 885 n.6. Of course, not every claim against a health care provider that arises in a medical setting is considered a health care liability claim. *See, e.g.*, *Lacy v. Vanderbilt Univ. Med. Ctr.*, No. M2016-02014-COA-R3-CV, 2017 WL 6273316, at *8 (Tenn. Ct. App. May 4, 2017) (unable to conclude that claim alleging that medical staff beat plaintiff while she was a patient in the emergency department was related to the provision of health care services); *Cordell*, 544 S.W.3d at 338 (concluding that alleged rape of unconscious hospital patient bore no relationship to the provision of heath care services).

5

Dismissal with prejudice is appropriate if the untimeliness of the action "clearly and unequivocally appears on the face of the complaint." *Anthony v. Tidwell*, 560 S.W.2d 908, 909 (Tenn. 1977); *accord Story v. Bunstine*, 538 S.W.3d 455, 473 (Tenn. 2017). A health care liability action must be filed within one year after the accrual of the cause of action. *See* Tenn. Code Ann. §§ 29-26-116(a), 28-3-104(a)(1) (2017). In essence, a health care liability action accrues on the date of the injury or when the plaintiff discovers, or in the exercise of reasonable care should have discovered, the injury. *Sherrill v. Souder*, 325 S.W.3d 584, 592-93 (Tenn. 2010); *Hoffman v. Hosp. Affiliates, Inc.*, 652 S.W.2d 341, 344 (Tenn. 1983); *Teeters v. Currey*, 518 S.W.2d 512, 517 (Tenn. 1974). Here, Ms. Clark's injury occurred on July 25, 2023, but she did not file her circuit court complaint until October 4, 2024.[2]

Ms. Clark argues that the complaint does not affirmatively show that it was filed more than a year after she discovered the injury. The statute of limitations began to run when Ms. Clark "discover[ed], or in the exercise of reasonable diligence should have discovered, both (1) that . . . she ha[d] been injured by wrongful or tortious conduct and (2) the identity of the person or persons whose wrongful conduct caused the injury." *Sherrill*, 325 S.W.3d at 595. This does not mean that Ms. Clark had to know the full extent of her damages or that the injury was a breach of a particular legal standard or even that she had a specific type of legal claim before her cause of action accrued. *Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 459 (Tenn. 2012); *Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994). "Actual knowledge of tortious conduct" is not a prerequisite to the accrual of a health care liability cause of action. *Sherrill*, 325 S.W.3d at 596. Ms. Clark's cause of action accrued when she was aware of sufficient facts to put a reasonable person on inquiry notice of a wrongful act by the defendant. *Id.* at 595.

At this early stage in the litigation, we must take the allegations in the complaint as true and draw all reasonable inferences in Ms. Clark's favor. *Webb*, 346 S.W.3d at 426. Viewed in that light, the allegations in the complaint do not "clearly and unequivocally" show that Ms. Clark had sufficient information "to alert a reasonable person of the need to investigate the injury" before June 2024. *Anthony*, 560 S.W.2d at 909; *Woodruff by & through Cockrell v. Walker*, 542 S.W.3d 486, 495 (Tenn. Ct. App. 2017). On July 25, 2023, Ms. Clark knew that Dr. Maikis performed the biopsy. She knew that Dr. Maikis did not "ask [her] first or discuss anything related to this procedure with [her] before commencing." She also "knew that what happened . . . during this office visit" was "not right." She "felt violated." But none of this meant anything to her until she saw the notations about consent in her medical records in June 2024. Only then did she discover

---

[2] According to the complaint, Ms. Clark initially filed this action in federal district court on July 25, 2024. But this was "the incorrect jurisdiction, per the Federal Court order dated 9/3/2024." Although plaintiffs who "fil[e] an action in a federal court that is subsequently dismissed for lack of jurisdiction" have one year "from the date of such dismissal to timely file such action in an appropriate state court," Ms. Clark does not rely on this savings statute on appeal. *See* Tenn. Code Ann. § 28-1-115 (2017).

6

the "tortious origin or wrongful nature" of the physician's conduct. *See Shadrick v. Coker*, 963 S.W.2d 726, 734 (Tenn. 1998).

We conclude that dismissal with prejudice based on the statute of limitations was premature. Whether a plaintiff exercised reasonable care and diligence under the circumstances to discover wrongful conduct is normally a question of fact. *Sherrill*, 325 S.W.3d at 596. A reasonable trier of fact could conclude that Ms. Clark did not know and had no reason to suspect that she had sustained an injury because of wrongful conduct until she learned about the necessity of consent in June 2024. *See Shadrick*, 963 S.W.2d at 735.

## III.

We conclude that Ms. Clark asserted a "health care liability action" as defined in the Health Care Liability Act. Dismissal of her complaint was appropriate based on her failure to provide the defendants with pre-suit notice. But because the complaint does not clearly and unequivocally show that it was filed more than one year after Ms. Clark discovered the injury, we modify the dismissal to a dismissal without prejudice. Otherwise, we affirm the court's decision.

_____s/ W. Neal McBrayer_____
W. NEAL MCBRAYER, JUDGE